744 So.2d 517 (1999)
Milton HALL, Appellant,
v.
The STATE of Florida, Appellee.
No. 98-1227.
District Court of Appeal of Florida, Third District.
October 6, 1999.
*518 John H. Lipinski, Hollywood, for appellant.
Robert A. Butterworth, Attorney General, and Christine E. Zahralban, Assistant Attorney General, for appellee.
Before NESBITT, SHEVIN and SORONDO, JJ.
SORONDO, J.
Milton Hall appeals from the lower court's order of revocation of his probation and six year sentence. We reverse.
Pursuant to a plea agreement, Hall was convicted of robbery and burglary with an assault therein and sentenced as a youthful offender to three years probation with special conditions including boot camp. While Hall was on probation, an affidavit of violation was filed alleging that he committed the offenses of burglary of an occupied conveyance and strong arm robbery on March 30, 1997.
The trial court conducted a joint probation revocation hearing of Hall and a co-defendant, Wallace Foster. The victims of the crimes, Canadian tourists Paul and Joanna Tsang, did not testify.[1] The principal evidence against Hall and Foster came from testimony of Officer Jose Belekas and Detective Alfredo Alvarez.
Detective Alvarez interviewed the Tsangs at their hotel. He testified that they told him that around 11:20 a.m. on March 30, 1997, they stopped at a gas station at Second Avenue and Southwest Seventh Street to ask for directions. As Paul Tsang attempted to drive away from the station, a black male stood in front of their car, blocking the way. Meanwhile, a second black male walked around the car, looked in the windows, smashed the passenger side window, grabbed Joanna Tsang's purse, struggled with her and snatched the purse from around her neck. The men then got into a dark blue Buick parked about a half a block away, which *519 was occupied by two other men. The Tsangs tried to follow this car, but they lost it and returned to their hotel.
Detective Alvarez testified that he put out a BOLO for the robbery suspects, whom he described as two young black males, and possibly a third, average height (5'7" to 5'9"), in a dark blue Buick with a partial tag number of either GHT157 or GHK157. Detective Alvarez believed that the BOLO stated that two of the suspects wore white shirts (one tank-top and one t-shirt). Officer Belekas testified that the BOLO was for a brown vehicle with New Jersey tags and four black males, 18-22, wearing dark clothing.
Officer Belekas testified that around 12:30 p.m. he and his partner were riding in their patrol car in the area of Fourth Avenue and Northwest Ninth Street. They turned and saw four subjects who fit the description in the BOLO standing together in a group next to a dark car. As the officers approached, the men looked at them and began to get nervous. Officer Belekas saw two of the men, Coleman and a bigger black male, drop something onto the ground. The officers got out of their car and stopped the four men. Officer Belekas found two credit cards, bearing Joanna Tsang's name, on the sidewalk. He also observed a cut on Hall's hand. When the officers searched the men, they found Canadian currency in Coleman's pocket.
Shortly thereafter, Detective Alvarez got a call informing him that four black men had been detained in connection with the BOLO. Detective Alvarez responded to the scene. He testified that Hall was wearing a white tank top and Foster was wearing a white t-shirt. Detective Alvarez noticed some "fresh cuts" on Hall's right arm and palm, which he described as very small tears in the skin with blood on them, as well as some old scars on his arm. Later on cross-examination, after being shown a photograph of the defendant's hand taken on the day of his arrest, Detective Alvarez modified his description of the cut on Hall's hand as "a razor cut ... red, but not bleeding" and characterized it as "very minor."
A stolen, four-door, brown Buick that closely matched the description given by the victims was found a few blocks from where the men were stopped. The license tag on this car was GHA51K, while Detective Alvarez testified that the tag number given to him by the victims was either GHT157 or GHK157. Detective Alvarez testified over a hearsay objection that some women in the area where the Buick was found had described four black men who got out of the car. These ladies "did not want to get involved" but they told Detective Alvarez that a big heavyset man was driving and described a fourth black male, who turned out to be a man named Damas, who the police later arrested in connection with another case.[2] The Buick was processed for fingerprints but the prints lifted did not match Hall, Foster or Coleman.
The police brought the Tsangs to the location where the men were stopped. Detective Alvarez testified that Joanna Tsang immediately identified Hall as the man who smashed her window, and became very agitated, and that after she calmed down she then identified Foster as the man in front of the car. Detective Alvarez testified that Paul Tsang looked at the men for a few minutes and also identified Foster as the man in front of the car. Paul Tsang later pointed out Hall as looking similar to the man who went to the window, although he was unsure.[3] Officer Belekas testified that the Tsangs identified three out of the four suspects, Hall, Foster and Coleman. Officer Belekas later clarified *520 that he was not close enough to hear the victims make their identifications, and his understanding regarding the positive I.D. came from the detective.
The deposition testimony of Paul Tsang regarding the identifications differed from that of the officers. Paul Tsang testified that the man he positively identified was the man walking around the car and looking in the windows, not the man standing in front of the car. Paul Tsang could not describe the clothing that the man blocking the car wore, other than to say maybe something light colored. He could not describe his face and testified that he would not be able to identify him again. Paul Tsang testified that the person looking through the window was wearing a white t-shirt, but could not remember whether it had sleeves. Paul Tsang testified that the license plate number they gave to the police was based on a consensus of his recollection and that of his wife, their eight-year-old daughter and his wife's parents. Both Paul and Joanna Tsang testified on deposition that they identified the defendants not by their faces, but rather by their body shapes and clothing.
Detective Alvarez testified that both Hall and Foster gave statements denying any involvement in the robbery. Coleman told the police that he found the credit cards while walking on the street. Detective Alvarez acknowledged that there was no physical evidence tying Hall and Foster to the crimes, only the identifications.
The defense moved for judgment of acquittal on the grounds that all of the testimony at the hearing was based upon hearsay. The defense argued that hearsay cannot be the sole basis for finding a defendant guilty of a probation violation. The court denied the motion.[4]
The defense presented testimony from five separate alibi witnesses. Hall's mother, aunt and cousin testified that on March 30th, which was Easter Sunday, they were having a barbeque to celebrate, as Hall had returned home from boot camp the week before. They all saw Hall and Foster standing at the gate of the yard until about 12:00 p.m., when Hall said he was going to the store.[5] Foster's mother and a neighbor testified that they went to the beach that day, and they last saw Hall and Foster as they left between 11:30 and 11:45 a.m. Hall's mother and cousin also testified that on the Thursday three days before the barbeque, Hall cut his palm while helping his cousin assemble a bed.
The defense renewed the motion for judgment of acquittal. The trial court noted that the police found the defendants in a group of four young black males, one of whom had the stolen property in his possession, that there was hearsay testimony that these men got out of a car which bore the license plate described by the victims, that the victims identified the defendants about an hour and ten or twenty minutes after the crimes and that Hall had fresh scratches on the palm of his hand. The court found that when all of these elements were considered together, there was sufficient evidence to find that Hall and Foster had violated their probation.
The law is clear that a person's probation cannot be revoked solely on the basis of hearsay evidence. See Shaw v. State, 710 So.2d 182 (Fla. 3d DCA 1998); *521 Ford v. State, 678 So.2d 432 (Fla. 4th DCA 1996); Colina v. State, 629 So.2d 274 (Fla. 2d DCA 1993); Lira v. State, 579 So.2d 781 (Fla. 3d DCA 1991). In this case, the State introduced an overwhelming amount of hearsay evidence. It argues that enough non-hearsay evidence was introduced to sustain the defendant's probation revocation. We acknowledge the line of cases which hold that probation can be revoked on the basis of hearsay if that hearsay is corroborated by other non-hear-say evidence. See e.g., Thomas v. State, 711 So.2d 96 (Fla. 4th DCA 1998); Miller v. State, 661 So.2d 353 (Fla. 4th DCA 1995); Corona v. State, 642 So.2d 667 (Fla. 3d DCA 1994); Mathis v. State, 545 So.2d 483 (Fla. 1st DCA 1989). We conclude, however, that the non-hearsay evidence presented in this case was insufficient. The only direct, competent evidence admitted against this defendant was the fact that he had a "very minor" "razor cut, ... red, but not bleeding" on his hand. The stolen automobile allegedly used in the robbery was three blocks away from where the defendant and the others were arrested, and the stolen credit cards and money belonging to the victims were in the exclusive possession of one of the other men.
In Combs v. State, 351 So.2d 1103 (Fla. 4th DCA 1977), the Fourth District Court of Appeal stated that "the rule requiring more than hearsay to establish a violation of probation requires other evidence of the defendant's misconduct, not just other evidence." See also Robinson v. State, 445 So.2d 1135 (Fla. 2d DCA 1984)(quoting Combs). The cut on Hall's hand is insufficient to corroborate his alleged misconduct in this case. This is particularly true in light of the explanation offered by the defense witnesses about the origin of the cut. In Robinson, the state sought to revoke the defendant's probation on the grounds that the defendant had physically abused her daughter. The evidence presented at the hearing established that police responded to the defendant's home and observed bruises on the child's chin, chest and leg. The officer also identified photographs which showed the extent of the child's injuries. He further testified that both the child and the defendant independently told him that the injuries had been sustained during a fall down a flight of stairs.
During the hearing the child testified that she had no recollection of the incident or the investigation.
A detective testified that she had interviewed the child several days after the incident and the child had told her that her mother had beaten her with a belt on the day before the officer went to her house. The child further said that her mother had told her to tell the police that she had fallen down the stairs.
At the hearing, the defendant testified that the child had fallen down the stairs.
The Second District Court of Appeal concluded that "[n]either [the officer's] testimony nor the photographic evidence of [the child's] injuries established appellant's guilt of any misconduct." Robinson v. State, 445 So.2d at 1135. The same conclusion holds true in the present case.
We reverse the trial court's order revoking Hall's probation and the sentence imposed thereon.
NESBITT, J., concurs.
SHEVIN, J., specially concurring.
Regrettably, I am compelled to join the majority because of the state of the record in this case. The law is clear that hearsay evidence cannot be the sole basis for supporting a finding of probation violation. See Shaw v. State, 710 So.2d 182 (Fla. 3d DCA 1998); Ford v. State, 678 So.2d 432 (Fla. 4th DCA 1996); Colina v. State, 629 So.2d 274 (Fla. 2d DCA 1993); Lira v. State, 579 So.2d 781 (Fla. 3d DCA 1991). However, that pitfall would have been avoided had the state possessed the foresight to use the alternative method approved by the Florida Supreme Court in *522 Harrell v. State, 709 So.2d 1364 (Fla.1998), approving 689 So.2d 400 (Fla. 3d DCA 1997).[6]
Harrell approved the admission of testimony through the use of live satellite transmission as an exception to the Confrontation Clause upon satisfaction of two conditions: (1) that the procedure "be justified, on a case-specific finding, based on important state interests, public policies, or necessities of the case and (2) must satisfy the other three elements of confrontation oath, cross-examination, and observation of the witness's demeanor." Harrell, 709 So.2d at 1369. Both conditions could be satisfied in this case.
The public policy considerations were satisfied in that the foreign witnesses, victims of the crime, lived beyond the subpoena power of the court, see Harrell, 709 So.2d at 1369, the witnesses were not motivated to return to the scene of the crime, and their testimony was necessary for the state to resolve this pending criminal matter. I have no doubt the state could have assuaged the court's conscience that the second condition would be metits procedures would satisfy the Confrontation Clause safeguards.
Having failed to avail itself of the satellite testimony option, the prosecution was unable to prevail. This is unfortunate, as an affirmable violation of probation finding would have no doubt resulted had this procedure been followed.
NOTES
[1] At the outset of the hearing, the defendants sought to introduce the Tsangs' depositions with the state's agreement, but the trial court ruled that they had to wait until the defense case. Prior to the close of the state's case, the state introduced the Tsangs' depositions into evidence. Affidavits executed by the Tsangs on the date of the crimes were also introduced by the state.
[2] Detective Alvarez testified over defense objection that the brown Buick recovered by the police was also involved in two other smash and grab tourist burglaries.
[3] Detective Alvarez's testimony regarding the Tsangs' identifications was consistent with their affidavits.
[4] The trial judge seems to have been under the impression that the defendants had both agreed to the introduction of the depositions as substantive, non-hearsay evidence. The record does not support this conclusion. Indeed, the defendants repeatedly objected to the introduction of so much hearsay, and continuously reminded the court that it could not revoke the defendants' probation on the sole basis of hearsay evidence. Even if they had not objected, however, hearsay is admissible at probation revocation hearings and a probationer need not object to every bit of hearsay introduced by the state during such a hearing in order to ultimately argue that there is insufficient non-hearsay evidence to justify a revocation of probation.
[5] The Halls lived across the street from the Fosters and less than six blocks away from where the defendants were arrested.
[6] This court's opinion in Harrell, issued on March 5, 1997, predates the January 30, 1998, revocation hearing.