770 So.2d 733 (2000)
Ernest WILCOX, Appellant,
v.
STATE of Florida, Appellee.
No. 4D99-2588.
District Court of Appeal of Florida, Fourth District.
November 8, 2000.
*734 Richard L. Jorandby, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Rajeev Saxena, Assistant Attorney General, West Palm Beach, for appellee.
OWEN, WILLIAM C., Jr., Senior Judge.
Appellant's probation was revoked and he was sentenced on the underlying offense after he was charged with, and found guilty of, four counts of violation of his probationaggravated assault on Louella Smith (Count I), resisting an officer without violence (Count II), possession of a weapon without permission (Count III), and improper exhibition of a weapon (Count IV). Because we find that the court erred in finding a violation as charged in Count III, we reverse and remand for further proceedings.
The relevant evidence is stated most favorably to the state. Appellant, in the home of Louella Smith where he had been living for several years, became involved in an argument with Louella over her demand that he move out. Appellant put his hand in his pocket and took out his pocket knife. Louella yelled to her daughter, Quinella, who at that time was in her room with a friend, Ronechea Rogers, to "call the police because Ernest picked up a knife."
Quinella and Rogers came out to see what was happening. Both saw appellant and Louella arguing, but neither saw nor heard appellant threaten to harm Louella with a knife. Nonetheless, Quinella went back to her room to call the police. Rogers stayed momentarily and exchanged some words with appellant, who reacted by chasing Rogers from the room as he was unfolding the pocket knife. Rogers felt threatened by his actions and hid in a bedroom.[1]
*735 Deputy Jenkins, the officer who arrived in response to Quinella's telephone call, was met outside the house by both Quinella and Rogers. Quinella told him "Mr. Ernest was going to kill her mother," and Rogers told him appellant had threatened her with a knife. Louella, with whom he spoke at the door, told him appellant had pulled a pocket knife out and pointed it at her in a threatening manner. The officer, while searching for appellant, found him sitting on the living room couch and saw him remove something from his pocket and put it behind him. Initially, appellant refused the officer's request to show his hands and to stand up. Ultimately, after appellant had put up some resistance, the officer was able to force him to the floor and place him in handcuffs.[2] A search of the sofa where he had been seated produced a small pocket knife with a three-inch blade. At the time it was placed in evidence, the court acknowledged it to be a common pocket knife.[3]
The state called Louella as its witness. Initially, she testified much as the prosecutor had anticipatedthat, when she insisted appellant would have to move out, the two of them became involved in an argument; that she then pushed him and, when she did, he put his hand in his pocket; and that movement, so she said, was one which instinctively told her he was reaching for the knife that she knew he carried. At that point in her testimony, however, Louella figuratively dropped a bombshell on the state's case. Unlike what she had ostensibly told Deputy Jenkins, she testified that appellant did not, in fact, pull his knife from his pocket, nor did he at anytime ever threaten her with the knife; rather, she explained, when appellant reached for his pocket, she simply over reacted and instinctively yelled to her daughter "to call the police" on the assumption that he was going for his knife.
The prosecutor, obviously surprised[4] by this totally unexpected exculpatory testimony from the alleged "victim," then sought to impeach Louella's credibility with her prior inconsistent statements contained in what the prosecutor described as a sworn police report, purportedly made by Louella at the police station the day following the incident involved here. Compatible with the requirements of section 90.614, Florida Statutes, the prosecutor showed the document to Louella, but she steadfastly denied that the statements in the document accurately reflected the statements she had made to the police. Despite Louella's denial that she made the several statements which the prosecutor read from the document, the state did not offer into evidence either the document or any other extrinsic evidence that Louella had made the statements contained therein.[5]
*736 Count I of the Affidavit of Violation charged that appellant did unlawfully commit an aggravated assault upon Louella Smith with a knife by extending the blade out thereby placing her in fear of imminent violence. An assault is defined by statute as an intentional, unlawful threat by word or act to do violence to the person of another, coupled with the apparent ability to do so, and doing some act which creates a well-founded fear in such other person that such violence is imminent. See § 784.011, Fla. Stat. (1999). Appellant contends that there was no substantial competent evidence to support this charged violation.
Hearsay, though admissible in a probation revocation hearing, is insufficient standing alone to establish a violation of a condition of probation. See, e.g., Render v. State, 755 So.2d 653, 654 (Fla. 4th DCA 1998); Hall v. State, 744 So.2d 517, 520-21 (Fla. 3d DCA 1999); Soto v. State, 727 So.2d 1044, 1046 (Fla. 2d DCA 1999). However, probation can be revoked on the basis of hearsay inadmissible at a criminal trial in combination with evidence admissible as an exception to the hearsay rule, see Thomas v. State, 711 So.2d 96, 97 (Fla. 4th DCA 1998). Here, the testimony that the victim yelled to her daughter to call the police, "because Ernest picked up a knife," was admissible under section 90.803(2) as an excited utterance exception to the hearsay rule. See Willis v. State, 727 So.2d 952 (Fla. 4th DCA 1998). That competent evidence, in combination with Deputy Jenkins' hearsay testimony (concerning Louella's out-of-court statement that appellant pointed the knife at her in a threatening manner), was sufficient to prove that appellant had committed an aggravated assault. See Thomas.
Count III of the Affidavit of Violation charged that appellant violated Condition K-3 by having in his possession a weapon without procuring the consent of his probation officer. Condition K-3 of the Order of Probation reads as follows:
You will not possess, carry or own any firearm. You will not possess, carry or own any other weapon without first procuring the consent of your officer.
We think it clear that the court intended, by lining out the printed condition, "You will not possess, carry or own any other weapon without first procuring the consent of your officer," to eliminate such proscription as a condition of appellant's probation. It is elementary that the court may not revoke a defendant's probation based upon the violation of a condition with which he was not ordered to comply. See Narvaez v. State, 674 So.2d 868, 869 (Fla. 2d DCA 1996).
In summary, we find record support for the court's finding that appellant violated the order of probation as charged in Counts I, II and IV of the Affidavit. However, because the record does not reveal whether the trial court would have revoked probation on the basis of those violations even had the court not also found a violation as charged in Count III, or, even so, would have imposed the same sentence, we reverse the order of revocation and remand this cause to the trial court for such lawful disposition on the violations charged in Counts I, II and IV as it deems appropriate. See Meadows v. State, 747 So.2d 1043 (Fla. 4th DCA 2000); Antoine v. State, 684 So.2d 266, 267 (Fla. 4th DCA 1996); Brown v. State, 659 So.2d 1260 (Fla. 4th DCA 1995).
REVERSED and REMANDED.
STONE and KLEIN, JJ., concur.
NOTES
[1] Rogers' testimony to this effect was sufficient to support the finding of guilt on Count IV.
[2] Deputy Jenkins' testimony to this effect was sufficient to support the finding of guilt on Count II.
[3] Appellant testified in his own behalf and acknowledged that the knife was his. He denied that he pulled the knife on Louella or threatened her by pointing the knife at her. He admitted that, when Rogers intervened in the argument and sassed him, he did partially pull out the pocket knife as he chased her from the room.
[4] Neither surprise nor affirmatively harmful testimony are any longer prerequisites for a party to attempt to impeach its own witness. However, the element of surprise is a factor for the court's consideration in determining whether a witness may have been called for the primary purpose of introducing a prior inconsistent statement which otherwise would have been inadmissible. See Morton v. State, 689 So.2d 259, 262 (Fla.1997), receded from on other grounds by Rodriguez v. State, 753 So.2d 29, 47 (Fla.2000). There is no indication that such was the case here.
[5] The portions of the document which were read to Louella by the prosecutor reflect statements which, had there been proof that she made them, would clearly contradict her in-court testimony (in which she testified that appellant did not pull out his knife or threaten her with it). The state's failure to offer that evidence does not appear to have been harmful to the state. Because these purported prior inconsistent statements were not made under conditions meeting the requirements of section 90.801(2)(a), Florida Statutes, they remained hearsay. See, e.g., J.J. v. State, 757 So.2d 1268, 1269 (Fla. 4th DCA 2000). Thus, evidence of Louella's prior inconsistent statements would, at best, have been useful only as impeachment and it is clear that the court did not believe her in-court testimony.