TAYLOR, J.
We reverse the revocation of appellant’s community control, which was based solely on statements appellant purportedly made to his community control officer through an interpreter.
Appellant was charged in multiple cases with offenses that arose from the theft of motor vehicles, possession of counterfeit VIN decals, and title fraud. After appellant entered guilty pleas in these cases, the trial judge sentenced appellant to ten years of probation, with two years of community control as a special condition.
Three months later, the Department of Corrections filed an affidavit alleging that appellant violated his community control by fading to remain confined to his approved residence three times on December 12, 2000:(1) from 9:07 a.m. to 9:29 a.m.; (2) from 11:00 a.m. to 12:51 p.m., and (3) from 4:59 p.m. to 5:07 p.m.
At the final violation hearing, the state called appellant’s community control officer, Sean Satterfield, as its sole witness. Satterfield testified that appellant wore an electronic monitoring device, which recorded his “in and out ranges” through BI Monitoring, Inc. He said that he received a fax from BI Monitoring indicating that appellant had been absent from his residence at the alleged times on December 12, 2000. When the state attempted to introduce BI Monitoring, Inc.’s records as businesses records through Satterfield, appellant objected on hearsay grounds. The trial court sustained the objection and agreed that it would not base a violation solely on this evidence.
Community Control Officer Satterfield then testified that on December 12, 2000 appellant had permission to report to the probation office between 9:00 a.m. and 12:00 noon. Appellant, who lives about five to ten minutes from the office, reported to the probation office at 10:12 a.m. and left at 10:30 a.m. Satterfield later questioned appellant about his whereabouts for the twenty-two minutes between 9:07 a.m. and 9:29 a.m. He said that appellant told him he was absent during that period because he was getting his car serviced. Because the electronic monitoring records indicated that appellant did not return home after his probation visit until 12:51 p.m., Satterfield also questioned him about this two-hour delay. According to Satterfield, appellant said he had gone to visit his daughter at school. When questioned about his whereabouts from 4:59 p.m. to *1182 5:07 p.m. that evening, appellant denied that he was absent from his home at that time.
On cross-examination, Satterfield testified that appellant, who is Spanish-speaking, had only a limited understanding of English. Satterfield acknowledged that he does not speak Spanish and that when he questioned appellant in his office about the violations, he had to rely on an interpreter because appellant was speaking only in Spanish. The interpreter was someone whom Satterfield called into his office to assist him in understanding appellant.
Appellant testified at the revocation hearing through a court interpreter. He testified that his community control officer would often speak to him in English, but he could understand only a few words. When they met in Satterfield’s office to discuss the alleged violations, Satterfield began their conversation in English. He later went out and returned with an interpreter. Appellant denied saying anything about getting his car serviced or going to his daughter’s school. He testified that he was at home at those times and that he stayed home that evening watching rented movies. Two witnesses called by appellant corroborated his testimony. Additionally, appellant testified that the electronic monitoring machine was malfunctioning and that he and his wife had complained about problems they were having with the equipment.
Appellant sought dismissal of the community control violation charges, arguing that the state failed to meet its burden of proof because it presented only hearsay evidence: the computer printouts from the electronic monitoring company and the testimony from the community control officer concerning appellant’s statements about his absences from home. Appellant maintained that these statements allegedly made by appellant through an interpreter were hearsay.[1]
The trial court found appellant guilty of violating his community control by being absent from his residence without approval on December 12, 2000 from 9:07 a.m. to 9:29 a.m. and from 11:00 a.m. to 12:51 p.m. The court found him not guilty of violating by being absent from 4:59 p.m. to 5:07 p.m. The court explained that its finding was based on appellant’s admissions to the community control officer and not on the records of BI Monitoring.
Hearsay, though admissible in a probation revocation hearing, is insufficient standing alone to establish a violation of a condition of probation. Wilcox v. State, 770 So.2d 733, 736 (Fla. 4th DCA 2000). “However, probation can be revoked on the basis of hearsay inadmissible at a criminal trial in combination with evidence admissible as an exception to the hearsay rule....” Id.
In Chao v. State, 478 So.2d 30 (Fla.1985), the Florida Supreme Court held that testimony of statements made by a defendant through an interpreter is hearsay, but that it could be admissible as an admission under Section 90.803(18)(c), Florida Statutes. In Chao, the defendant shot his ex-girlfriend and then arranged to surrender to the police by having his uncle by marriage meet with him and the detective. The defendant spoke only Spanish. The detective neither spoke nor understood Spanish. The uncle translated for the defendant and the detective and read the defendant his Miranda warnings in Spanish. At trial, the uncle testified that he had translated truthfully but that he *1183 could not remember the translated questions and answers. The detective was permitted to testify to the defendant’s statements as translated by his uncle.
On appeal to the Second District Court of Appeal, Chao claimed the trial court erred in admitting his statement, as translated by his uncle and testified to by the detective. The district court found no error and affirmed, citing Meacham v. State, 45 Fla. 71, 33 So. 983 (1903), for the proposition that testimony recounting a translated conversation is not hearsay. Clarifying that such testimony is hearsay, though possibly admissible as an exception, the supreme court stated:
From a perspective of more than eighty years later, we cannot determine whether the Court was holding that the statement was not hearsay or that it was hearsay, but nevertheless admissible as an exception. In any event, we disapprove any suggestion that testimony recounting a translated out-of-court conversation is not hearsay. “ ‘Hearsay’ is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” § 90.801(l)(c), Fla. Stat. (1981). The statement in the present case clearly fits the statutory definition of hearsay, although we find that it was admissible nonetheless as an admission under section 90.803(18)(c), Florida Statutes (1981), hearsay exception:
(18) ADMISSION. — A statement that is offered against a party and is:
[[Image here]]
(C) A statement by a person specifically authorized by him to make a statement concerning the subject;
Under subsection (C) a person can authorize another to speak for him and the admission made can be admitted against the party who authorized the other to speak for him. The person giving the authorization need not, under this subsection, hear the subsequent statement. For this reason an admission specifically authorized to be given through a competent interpreter is like any other admission authorized to be given by an agent and may be testified to by the person to whom the agent gives the statement.
Chao, 478 So.2d at 32.
The Chao court then concluded that under the circumstances of that case “it [was] obvious that Chao authorized [the uncle] to speak for him.”
In Herrera v. State, 532 So.2d 54 (Fla. 3d DCA 1988), the third district concluded that an undercover police officer’s testimony concerning statements made by the defendant during a drug transaction, which were translated to him by an accomplice, was admissible. The court reasoned that although the officer’s testimony containing the translated statements could be considered hearsay under Chao, the testimony fell within the exception to the hearsay rule for a statement by another person specifically authorized by the defendant to make such statement. There, the court concluded that the circumstances clearly indicated that appellant authorized the accomplice to translate for him. In addition, the court interpreter confirmed the accuracy of the accomplice’s translation.
In this case, the record is devoid of any evidence that appellant’s statements were made through a interpreter authorized by appellant to speak for him. According to appellant, the community control officer called someone into his office to translate their discussion about his whereabouts on December 12. The evidence did not show that appellant either requested the interpreter or accepted him as his agent. Further, no evidence was presented as to the interpreter’s identity or com *1184 petence to accurately translate. Thus, this case is distinguishable from Chao and Herrera in that no facts were adduced herein to bring the community control officer’s testimony within the section 90.803(18)(c) hearsay exception.
As stated above, revocation cannot be based on hearsay alone. Here, the trial court relied solely on the hearsay testimony of the community control officer in finding that appellant violated his community control. We therefore reverse the order of revocation and remand for reinstatement of appellant to community control.
REVERSED and REMANDED.
STONE and SHAHOOD, JJ., concur.

. We reject the state’s argument that appellant did not preserve the hearsay issue for appellate review.