DAVIS, Judge.
Samuel Claude Selig challenges the revocation of his sex offender probation and his resulting five-year prison sentence. Because the trial court abused its discretion in finding that Selig willfully and substantially violated his supervision, we reverse.
Although the record before this court is limited, it is clear that Selig was originally convicted of a sexual offense in the early 1980s. Following his release from prison, he was convicted of failing to register as a sexual offender and placed on probation for that offense. Seng’s probation subsequently was modified on numerous occasions, resulting in the imposition *748 of additional conditions. On each of these occasions, the State attempted to violate Selig for conditions that were not included in the original terms of his probation. It appears that Selig acquiesced to the inclusion of the additional conditions by modification of the terms of his probation in efforts to remedy each instance of alleged violation.[1]
In June 2011, Selig was alleged to have committed the following three violations of his probation: (1) failing to follow the instructions of his probation officer to relocate (condition nine); (2) failing to account for three unexplained out-of-range alerts between his GPS bracelet and the monitor/charging dock (special condition added in 2009); and (3) failing to restart his sex offender therapy as instructed (special condition added in 2010). After hearing the testimony of two probation officers and Selig, the trial court orally found that Selig willfully and substantially violated all three conditions of probation as alleged.[2]
Selig, a painter, encountered problems in holding a job and a residence. It is undisputed that these problems stemmed from some kind of trauma and infection that resulted in the amputation of his arm. The amputation led to numerous complications and hospital stays, causing him to frequently relocate to different counties to be near hospitals for treatment. When he was not in the hospital for his own treatment, he was spending the majority of his time at medical facilities with his girlfriend, who was undergoing treatment for leukemia. During this time Selig continued to maintain contact with his probation officer and kept his GPS monitor charged and in range. But he stopped attending his therapy sessions either due to a lack of money or because of his medical treatments. His probation officer was aware that these treatments were temporarily suspended.
When Selig was released from the hospital and found himself without a place to stay, he contacted his probation officer and was told to report to the probation office. With the knowledge of the probation officer, Selig lived in a lean-to next to a dumpster behind the probation office while he searched for a place to stay. He used a wall outlet on the outside of the probation office building to charge his GPS monitor at night. During this same time period, Selig’s probation officer told him that because he was out of the hospital, he should make arrangements to restart his required sex offender therapy sessions. Because the landlord of the building was not in favor of Selig’s temporary housing solution behind the probation office building, Selig was given twenty-four hours to find somewhere else to live, which he did not do.
During the time he was living behind the office building, Selig’s GPS monitor alerted three times, indicating that he was not in range of the charging device. The testimony regarding what Selig was told in terms of the GPS distance rules and whether he was ever aware the alerts occurred is ambiguous at best. It is clear that at some point, Selig told his probation officer that he thought the monitor was not functioning properly. The testimony also showed that Selig was always at his “residence” behind the office building on the mornings following each of the alerts. No *749 one was ever sent to check on Selig at the time of the alerts. Selig stated that he never was aware of the alerts and that they all occurred during times when he was asleep. The probation officers could not clearly pinpoint the range of the GPS unit but acknowledged that the distance could vary and that the alerts might have happened due to Selig’s sleep movements.
The trial court erroneously found that the State only had to establish that the alerts occurred in order to find a violation. By law the State was required to establish that the conduct leading to the violations was willful and substantial. See Correa v. State, 43 So.3d 738, 744 (Fla. 2d DCA 2010) (“[T]he State failed to establish that Mr. Correa’s conduct involved deliberate violations of the GPS monitoring rules.”). We recognize that
intentional disregard of the GPS monitoring rules, tampering with the equipment, or actual violations of curfew or other activity restrictions will generally amount to willful and substantial violations of the conditions imposed. But where ... the apparent noncompliance with the rules results from equipment problems or the subject’s unintentional failure to operate the equipment properly, the noncompliance with the rules does not rise to the level of a willful and substantial violation of probation or community control. It follows that the trial court abused its discretion in ruling to the contrary and in revoking [the defendant’s] community control.
Correa, 43 So.3d at 745-46.
Here, the State failed to offer any evidence as to the cause of the GPS monitoring alerts and certainly did not offer evidence that the alerts were the result of Selig’s conduct. And while it is accurate to say that the GPS alerts did not require law enforcement to ascertain Selig’s whereabouts, that does not mean that a failure to do so should not have been factored into the trial court’s determination regarding whether the State met its burden to show that the violations were willful and substantial. See Del Valle v. State, 80 So.3d 999, 1012 (Fla.2011) (“The trial court must ‘consider each violation on a case-by-case basis for a determination of whether, under the facts and circumstances, a particular violation is willful and substantial and is supported by the greater weight of the evidence.’ ” (quoting State v. Carter, 835 So.2d 259, 261 (Fla.2002))). Based on the record before us, we conclude that the trial court abused its discretion in finding that Selig willfully violated this condition of his probation.
Likewise, the trial court abused its discretion in finding that Selig willfully and substantially violated his probation by failing to find a new place to stay within twenty-four hours of being instructed to do so by his probation officer. The probation officer testified that the only shelter with available space did not take sex offenders and that she had no other options to offer Selig for finding a new place to stay. Selig testified that he was attempting to contact friends for housing assistance and indicated that he had succeeded in securing housing after the violation was filed but prior to his VOP hearing. The facts as presented do not show that Selig had the ability to comply with the twenty-four-hour relocation mandate.
“A defendant’s failure to comply with a probation condition is not willful where his conduct shows a reasonable, good faith attempt to comply[ ] and factors beyond his control, rather than a deliberate act of misconduct, caused his noncompliance.” Soto v. State, 727 So.2d 1044, 1046 (Fla. 2d DCA 1999). In Soto, the probationer “testified that when he arrived in California, he found himself in the no-win situation of having to choose between *750 violating his probation by staying in the approved residence with the children or violating his pi-obation by failing to stay in that residence.” Id.; see also Newton v. State, 996 So.2d 960, 962-63 (Fla. 2d DCA 2008) (concluding that State failed to establish a willful and substantial violation for failing to return to the probation office within twenty-four hours as instructed and changing residence without approval where State failed to show that the probationer had the ability to return in that time frame, probation officer attempted to find a new residence for the probationer but could not find a suitable location, and probationer complied as soon as his transportation issues were resolved).
Here, Selig was given the choice of staying behind the probation office and violating a condition of probation for not following the instructions of the probation officer or leaving the probation office without money, housing, and a place to charge the GPS device that he was required to wear as a condition of his supervision. Accordingly, Selig’s failure to comply with condition nine of his probation was not willful, and the trial court abused its discretion in finding it to be so.
Finally, with regard to the violation of the special condition added to Selig’s probation in 2010, Selig’s probation officer testified that near the beginning of June she instructed Selig that he should make arrangements to once again attend the mandated sex offender treatment that he had attended before his arm amputation and other health issues. There is no evidence that Selig was noncompliant prior to the health problems. But it is clear that he had been unable to pay any of the session fees and was in arrears to the treating doctor at the time of the VOP hearing. The probation officer’s instructions to resume therapy after his release from the hospital had no specific date for completion. But the time between the instruction and the violation could have constituted no more than a week or two. Selig testified that he had not been able to call for an appointment because he had either been at the hospital for treatments or at a doctor for daily bandage changes to combat infection for the entire month of June. It was not clear whether Selig was physically able to go to therapy because of his ongoing medical issues or whether his lack of financial ability to pay the provider prevented his receiving the treatment. It is also unclear how Selig was traveling to the different medical facilities in the various counties and whether the sex offender treatment was a significant distance from the probation office.
The deficient record fails to establish that Selig had the ability to access the required treatment and willfully refused to do so. See Butler v. State, 775 So.2d 320, 321 (Fla. 2d DCA 2000) (“From the evidence at the revocation hearing, it appears that Mr. Butler’s failure to comply with this condition resulted from confusion regarding the requirement and because of a transportation problem, not because of a deliberate act of misconduct. Furthermore, the condition did not specify a time by which the classes were to begin[,] and the probation officer did not specify a date certain for compliance. We conclude that the evidence failed to show a willful and substantial violation of this condition.” (citations omitted)).
We do note that a trial court clearly has the discretion to determine whether a failure to attend a program constitutes a willful and substantial violation and that there is no per se rule that prevents a trial court from finding a violation based on confusion or misunderstanding regarding the duty to report to a program required by probation. See Lawson v. State, 969 So.2d 222 (Fla.2007) (receding from any *751 per se rule that could be read into the holding of Butler, 775 So.2d 320, but acknowledging that such confusion or lack of clarity in the instructions a probationer must follow are factors the trial court may consider). But even limiting Butler’s reasoning regarding the lack of clarity in the instructions to a factor rather than a per se rule, that factor, coupled with the transportation, money, health, and housing problems evident on the instant record are sufficient to show that the trial court abused its discretion in finding a willful and substantial violation for Selig’s failure under the instant circumstances to make an appointment within the one- or two-week period after he was instructed to do so.
Because the trial court abused its discretion in finding that Selig willfully and substantially violated the three conditions of his probation at issue, we reverse the revocation of his probation and the resulting sentence.
Reversed.
SILBERMAN, C.J., and CRENSHAW, J., Concur.

. Whether Selig was adequately represented at these previous hearings and whether the additional conditions of probation were properly applied to Selig is not before this court in the instant case.

. Although not raised as an issue before this court, the written order of probation erroneously indicates that Selig admitted to violating condition nine of his probation. It is silent regarding the other two conditions that the trial court orally ruled he had violated.