# Third District Court of Appeal

## State of Florida

Opinion filed January 4, 2023.
Not final until disposition of timely filed motion for rehearing.

————————————

Nos. 3D21-1018 and 3D21-1019
Lower Tribunal Nos. F17-20909 and F19-10464

————————————

**The State of Florida,**
Appellant/Cross-Appellee,

vs.

**Jeremy Rojas,**
Appellee/Cross-Appellant.

Appeals from the Circuit Court for Miami-Dade County, Lody Jean, Judge.

Ashley Moody, Attorney General, and Sandra Lipman, Assistant Attorney General, for appellant/cross-appellee.

Carlos J. Martinez, Public Defender, and Susan S. Lerner, Assistant Public Defender, for appellee/cross-appellant.

Before EMAS, LINDSEY and GORDO, JJ.

EMAS, J.

## INTRODUCTION

Jeremy Rojas and the State entered into a written plea agreement that resolved two separate criminal cases: one arising out of an arrest in 2017, and the other arising out of an arrest in 2019 (while Rojas was on probation for his 2017 case). Under the terms of the agreement, and in exchange for pleading guilty to the charges in the 2019 case and admitting he violated probation, the State agreed Rojas would be sentenced to community control, followed by probation. The parties also expressly agreed that if Rojas violated community control or probation, he would be sentenced to "no less than ten (10) years state prison" on his 2017 case and "no less than. . . five (5) years" on his 2019 case. Rojas further agreed that he could not file a motion to mitigate those subsequent sentences. The trial court approved the negotiated plea and sentenced Rojas accordingly.

Three months later, Rojas was charged with violating the terms of his community control. Following a hearing, the trial court found Rojas in violation, and initially imposed a sentence of ten years' state prison (in the 2017 case) and five years' state prison (in the 2019 case), as required by the negotiated plea agreement. However, and over State objection, the trial court then mitigated each of those sentences to three years' imprisonment, to run concurrently.

2

The State appeals the mitigated three-year sentences, contending the trial court had no authority or discretion to deviate from the previously approved and agreed-upon sentences, and further asserts that the mitigated sentences constitute unauthorized downward departure sentences. Rojas cross-appeals the trial court's orders finding him in violation of his community control. For the reasons that follow, we affirm the trial court's orders finding Rojas violated his community control, but reverse the orders mitigating Rojas' sentences.

**<u>FACTS AND PROCEDURAL HISTORY</u>**

These consolidated appeals involve two separate criminal cases filed against Jeremy Rojas. In F17-20909, Rojas was charged with burglary with assault or battery (a first-degree felony punishable by life imprisonment), shooting/throwing a deadly missile (a second-degree felony punishable by fifteen years' imprisonment), corruption by threat against a public servant (a third-degree felony punishable by five years' imprisonment) and two misdemeanors.

In April 2018, pursuant to a negotiated plea, Rojas pled guilty, and the court imposed a split sentence (on the first two felony counts) to 270 days in

3

jail, followed by six years' probation.[1] In May 2019, while on probation, Rojas was arrested and charged with possession of cocaine (a third-degree felony) in F19-10464. As a result of his arrest on this new charge, the State also filed an affidavit alleging that Rojas violated his probation on the 2017 case.

In July 2020, as a result of negotiations between the parties, Rojas and the State entered into a written plea agreement to resolve both cases. In exchange for pleading guilty to possession of cocaine (the 2019 case) and admitting that he violated his probation on the 2017 case by committing a new crime, the parties agreed the trial court would modify Rojas' probation and place him on two years of community control followed by three years of probation.[2]

The parties' written agreement included the following terms:

- "The Defendant acknowledges and agrees that should he be found in violation, **the Defendant will be sentenced to no less than ten (10) years state prison in F17-20909 and to five (5) years state prison in F19-10646.**"

- "**The defendant's guidelines are 88.5 [months] at the bottom** to a maximum sentence of LIFE in prison."

- "**The Defendant shall not file a** motion to set aside guilty plea, or **motion to mitigate**."

---

[1] As to the third-degree felony, the court placed Rojas on a concurrent term of five years' probation.

[2] The three-year probationary term was in addition to the remaining, unserved portion of his probation from the earlier sentence on his 2017 case.

- "The Defendant acknowledges that the State is entering this agreement based on the mitigation provided by the Defendant. The Defendant also acknowledges that **this mitigation will not be available to assist him in his case in any subsequent violation of probation.**"

(Emphasis added).

Rojas and his attorney signed the written plea agreement and initialed each page as well. In announcing the agreement to the trial court, the prosecutor summarized:

> PROSECUTOR: So, the defendant has two cases presently, a probation violation as well as an open case, this will be closing out both, pursuant to this plea agreement. He will be released, and his probation will be modified. On the probation case he will be placed on two years community control, followed by two years' probation. As far as the open case, he will be adjudicated guilty and placed on two years community control, followed by three years of reporting probation.
>
> There is also a pertinent provision in which the defendant understands and acknowledges that **any violation** subsequent that the State does [prove by] a preponderance of the evidence **will result in a term of incarceration of no less than 10 years of State prison on the probation case-**
>
> ***
>
> So, if he violates the terms of his probation and the State does prove that by a preponderance of the evidence he is acknowledging and understanding that **he will be sentenced to no less than 10 years of State prison on the appropriate case, as well as 5 years of State prison on the open case**.

5

Defense counsel then advised the trial court:

DEFENSE COUNSEL: Judge, just for your edification, **that hammer clause was put in as part of the bargaining process, and it was explained to Jeremy, and he is well aware.**

(Emphasis added).

The trial court conducted a plea colloquy with Rojas, addressing each of the terms and conditions of the agreement. The trial court found Rojas entered the plea knowingly and voluntarily, that he understood the nature and consequences of his plea, and that he was represented by competent counsel with whom he was satisfied. The trial court entered a written order accepting, approving and ratifying the terms of the agreement, including those set forth above, and imposed the agreed upon sentence of community control followed by probation.

Less than three months later, on October 28, 2020, an affidavit of violation of community control was filed against Rojas, alleging that he willfully violated the terms of his community control by deviating from his schedule and approved travel routes without permission, leaving his GPS tracking device behind, and failing to be at home by his established 10 p.m. curfew.

On March 31, 2021, following a community control violation hearing, the trial court, after making factual findings and credibility determinations,

6

concluded that the State had established Rojas violated the terms of community control. The trial court inquired whether she had any discretion in sentencing Rojas, given the mandatory prison sentences agreed to as part of the plea agreement.[3] Defense counsel contended the court was not required to impose the ten-year and five-year prison sentences (the so-called "hammer clause") but had discretion to impose a lesser sentence. The State disagreed, contending that those sentences were mandatory under the negotiated plea agreement and the court was without the discretion to impose any sentence less than the ten-year and five-year prison terms as agreed. The trial court reset the sentencing hearing for April 16, 2021 observing:

> These plea agreements are going to come in front of me many, many times. . . . But if a Judge is going to sign off on these plea agreements, you know, these judges have to say what they mean and mean what they say. . . . So I am inclined to impose what he signed on—signed up for, you know.

The trial court added:

> The only thing I would have discretion in, because I have been thinking about this. The only thing I would have discretion is, having heard the evidence now, is potentially a motion to mitigate after the court pronounces sentence. And that would be under Rule 3.800.

---

[3] The trial judge who conducted the community control violation hearing and entered the sentencing orders on appeal was not the same judge who accepted, approved and ratified the written plea agreement.

7

Shortly after that hearing, and a week before the April 16 sentencing, Rojas filed two motions: a motion to mitigate and a motion for downward departure sentence. He requested a reduction of his sentence to eighteen months in prison followed by six years' reporting probation. He relied, at least in part, on a twelve-page psychological evaluation provided to the State in 2018 in support of the original plea negotiated between the parties.

At the sentencing hearing, and consistent with the terms of the written plea agreement, the trial court revoked Rojas' community control and initially sentenced Rojas to ten years in prison on the 2017 case,[4] and five years in prison on the 2019 case. However, immediately after imposing these agreed-upon sentences, the court announced it was mitigating Rojas' sentences, stating that it believed it could, on its own, mitigate the sentences pursuant to Florida Rule of Procedure 3.800(c). The trial court then reduced Rojas' sentences[5] to three years' state prison on each count of each case, all sentences to run concurrently.

---

[4] More specifically, in F17-20909, the trial court sentenced Rojas to ten years' state prison on Count One, and five years' state prison on Count Three and Count Five (all sentences to run concurrently).

[5] Because the trial court announced these mitigated sentences immediately after orally pronouncing the initial sentences, the record does not contain a written sentencing order reflecting the ten-year (2017 case) and five-year (2019 case) sentences initially imposed.

The State appeals the sentences as mitigated by the trial court. Rojas cross-appeals the court's ruling on the revocation of his probation, contending it was not supported by competent substantial evidence.[6]

**ANALYSIS AND DISCUSSION**

"A plea agreement is a contract and the rules of contract law are applicable to plea agreements." Garcia v. State, 722 So. 2d 905, 907 (Fla. 3d DCA 1998). See also State v. Gutierrez, 10 So. 3d 158 (Fla. 3d DCA 2009); State v. Frazier, 697 So. 2d 944, 945 (Fla. 3d DCA 1997); Madrigal v. State, 545 So. 2d 392 (Fla. 3d DCA 1989). We reaffirmed this well-established principle in Garcia, 722 So. 2d at 907, holding: "A defendant will

---

[6] As an initial matter, we reject Rojas' argument that the State had no right to appeal (and that this court is without jurisdiction to review) the trial court's order mitigating his sentence. In support of this proposition, Rojas cites State v. LaFave, 149 So. 3d 662 (Fla. 2014), which held the State had no statutory right to appeal an order granting defendant's motion for early termination of probation, even though such early termination expressly violated the terms of the underlying plea agreement between the State and defendant. However, the State correctly points out the mitigated sentences of three years' imprisonment not only violate the express terms of the previously approved plea agreement between the State and defendant, but also fall below the lowest permissible sentence under the Criminal Punishment Code. As a result, the State is authorized to appeal pursuant to section 924.07(1)(i), Florida Statutes (2021), which specifically provides that "[t]he state may appeal from: . . . [a] sentence imposed below the lowest permissible sentence established by the Criminal Punishment Code under chapter 921." See also State v. Brooks, 890 So. 2d 503 (Fla. 2d DCA 2005) (holding appellate court has jurisdiction where mitigated sentence constituted a downward departure from the minimum permissible sentence); State v. Swett, 772 So. 2d 48 (Fla. 5th DCA 2000).

not be relieved of an obligation that was included as a specific component of a plea agreement that was bargained for and voluntarily entered into by the defendant."

In State v. Swett, 772 So. 2d 48, 52 (Fla. 5th DCA 2000), the parties entered into a plea agreement under which the State agreed to reduce the original charge of first-degree murder to second-degree murder and recommend a sentencing range of 34-55 years' imprisonment in exchange for the defendant's plea of nolo contendere to the reduced charge. The trial court accepted the plea as negotiated between the parties and, following a sentencing hearing, sentenced Swett to 38.5 years in prison. Shortly thereafter, Swett filed a motion to mitigate under rule 3.800(c).[7] Following a hearing, the trial court reduced the sentence to twenty-one years in prison, which constituted a downward departure from the sentencing range (34 to 55 years) under the sentencing guideline scoresheet. Id. at 51. Our sister court reversed, holding that the trial court erred in mitigating and reducing the incarcerative portion of the sentence, because the original sentence imposed was part of a negotiated plea between the parties, approved by the court at the time it imposed the sentence. Id. at 52. The Fifth DCA noted:

---

[7] Unlike the instant case, the plea agreement in Swett did not prohibit defendant from filing a motion to mitigate his sentence.

10

"The sentence was part of a quid pro quo and the defendant cannot accept the benefit of the bargain without accepting its burden." Id.

Rojas contends the instant case is distinguishable because the trial court mitigated the sentence on its own, rather than pursuant to a motion filed by the defendant. While it is true that a trial court is authorized—under appropriate circumstances and pursuant to Florida Rule of Criminal Procedure 3.800(c)[8]—to impose a downward departure sentence, "the court's authority to impose such a sentence in a plea context is circumscribed." Swett, 772 So. 2d at 51. The trial court, under the facts and circumstances presented here, was without discretion to mitigate Rojas' sentence.

As an initial matter, we are dubious of Rojas' premise that the trial court mitigated the sentence "on its own," given the record of what actually transpired below. At the conclusion of the violation hearing, having determined that Rojas violated his community control, the trial court was "thinking out loud" about its sentencing discretion, given the mandatory prison sentences expressly agreed to by the parties. The trial court said it thought it might have the discretion to mitigate the sentences on its own

---

[8] Florida Rule of Criminal Procedure 3.800(c) provides in pertinent part that a "court may reduce or modify. . . a legal sentence imposed by it, sua sponte, or upon motion filed, within 60 days after the imposition. . . ."

11

under rule 3.800, but postponed the sentencing hearing for two weeks. One week later, Rojas filed a motion to mitigate his sentence and a motion for a downward departure. In each of these motions, Rojas set forth a variety of reasons why the court should reduce his sentence from the agreed-upon ten-year and five-year prison terms. Rojas' motion also proffered substantial mitigating circumstances, including a twelve-page psychological evaluation report prepared in 2018, which he had previously relied upon as part of the mitigation package in negotiating the original plea agreement. One week later, at the rescheduled sentencing hearing, the trial court announced the five-year and ten-year sentences and then "on its own" mitigated the sentences to concurrent three-year terms.

Even if we accept Rojas' proposition that the trial court acted without consideration of the motion to mitigate and motion for downward departure, along with the accompanying mitigation evidence, we reject the conclusion that the trial court had the authority or discretion to impose a mitigated or reduced sentence in light of the express terms of the original plea agreement.

We first observe that Rojas violated (or sought to violate) the express terms of the plea agreement in at least three material respects:

1) By filing a motion to mitigate despite his express agreement he "shall not file a motion to set aside guilty plea, or a motion to mitigate;"

2) By requesting the trial court impose a reduced sentence of eighteen months in prison, even though Rojas expressly agreed that, "should he be found in violation, the Defendant will be sentenced to no less than ten (10) years state prison in F17-20909 and to five (5) years state prison in F19-10646;" and

3) By seeking a mitigated sentence or downward departure, in which Rojas relied upon mitigating circumstances previously utilized in support of the original plea, even though he expressly agreed that "this mitigation will not be available to assist him in his case in any subsequent violation of probation."

These terms were a material part of the consideration which Rojas offered (and the State accepted) in exchange for the State's offer of community control and probation (which Rojas accepted). A plea agreement, like other contracts in Florida, is made "when three elements are present: offer, acceptance, and consideration." SGC Harbourwood, LLC v. Hanyan, 93 So. 3d 1197, 1200 (Fla. 2d DCA 2012). There is no question the parties entered into a binding contract. Of course, the one difference—

procedurally—between a plea agreement and other contracts, is that the plea agreement is not considered binding on the parties (or on the trial court) until it is approved and accepted formally by the trial court. Florida Rule of Criminal Procedure 3.172 provides in relevant part:

(a) <u>Voluntariness; Factual Basis</u>. Before accepting a plea of guilty or nolo contendere, the trial judge shall determine that the plea is voluntarily entered and that a factual basis for the plea exists.

(g) <u>Withdrawal of Plea Offer or Negotiation</u>. No plea offer or negotiation is binding until it is accepted by the trial judge formally after making all the inquiries, advisements, and determinations required by this rule. Until that time, it may be withdrawn by either party without any necessary justification.

(h) <u>Withdrawal of Plea When Judge Does Not Concur</u>. If the trial judge does not concur in a tendered plea of guilty or nolo contendere arising from negotiations, the plea may be withdrawn.

In the instant case, the plea agreement <u>was</u> approved and accepted formally by the trial court. The trial court conducted the appropriate plea colloquy, formally accepted the negotiated plea and its terms and conditions (including the mandatory sentence upon a subsequent violation), and imposed the sentence bargained for between the parties. The trial court's order ratifying the agreement provided inter alia that "the Court, by this Order, expresses its intention to sentence the Defendant in the manner and to the extent stipulated in the said plea agreement."

14

Having received the benefit of that bargain— community control and probation (instead of the maximum possible sentence of life in prison), Rojas cannot now disavow the consideration he gave (mandatory sentences of at least ten years and five years and a waiver of any right to seek mitigation if he violated that community control and probation) in exchange for the State's offer.

Further, the trial court cannot circumvent or otherwise thwart the obvious and express intent of the agreement by doing, on its own, the very thing the defendant is himself prohibited from seeking or asking the trial court to do. Were it otherwise, such agreements would be virtually unenforceable and, as we have previously observed: "permitting defendant to evade his negotiated plea by filing a motion to mitigate would discourage the State from entering into future plea bargains with other defendants." Gutierrez, 10 So. 3d at 159 (citing Swett, 772 So. 2d at 52).

Even if we accept the distinction Rojas proposes here, under the facts and circumstances of this case, it is a distinction without a difference. The mere fact that it was the trial judge, rather than the defendant, who initiated the mitigation is irrelevant. If the trial court believed that the sentence, as originally negotiated between the parties, was improper or inequitable, it was at the point when the negotiated plea agreement was presented for

15

acceptance that the trial court should have rejected it and given the party or parties the opportunity to withdraw from it. See Fla. R. Crim. P. 3.172(h) ("If the trial judge does not concur in a tendered plea of guilty or nolo contendere arising from negotiations, the plea may be withdrawn.") See also Goins v. State, 672 So. 2d 30, 32 (Fla. 1996) (pursuant to a negotiated plea, defendant pled guilty in exchange for an agreed-upon sentence of five and one-half years prison followed by three years' probation; trial court rejected the agreed-upon sentence and, without offering defendant the opportunity to withdraw his plea, sentenced him to nine years' prison followed by three years' probation. The Court held that where the parties reach a firm agreement for a specified sentence and the trial judge determines to impose a greater sentence, the "judge must affirmatively offer the defendant the right to withdraw the plea").

However, once the trial court formally accepts and ratifies a negotiated plea agreement and imposes sentence pursuant to the terms of that agreement, the trial court is obligated to abide by those terms and, if necessary, to enforce the terms agreed to by the parties. See, e.g., Devoid v. State, 987 So. 2d 219 (Fla. 5th DCA 2008) (observing trial court had authority to enforce plea agreement in order to effectuate its terms and prevent the actions of the Department of Corrections which would have

16

thwarted the terms of the plea). See also Williams v. Department of Corrections, 734 So. 2d 1132 (Fla. 3d DCA 1999); Davis v. Singletary, 659 So. 2d 1126 (Fla. 2d DCA 1995); Spencer v. State, 623 So. 2d 1211 (Fla. 4th DCA 1993).

In this respect, Rojas' reliance on the case of Rollman v. State, 887 So. 2d 1233, 1235 (Fla. 2004) is misplaced. While it is true that the Rollman Court held a trial court is not bound by the terms of a plea agreement entered into between the parties, the statement must be considered in its proper context—the trial court's authority **before** a sentence is formally accepted and imposed:

> [W]hen a judge who has participated in or tentatively approved a plea bargain decides not to include the concessions contemplated therein in his final disposition of the case and affirmatively offers the defendant the opportunity to withdraw his guilty plea, may the defendant refuse to withdraw his plea on the ground that the plea bargain is a specifically enforceable contract? We think not. It is our view that, even if the trial judge's indication of leniency is the only inducement a defendant has in pleading guilty, the court is not bound by it.

Id. at 1235 (quoting Davis v. State, 308 So. 2d 27, 29 (Fla. 1975)).

Reaffirming its holding in Davis, the Rollman Court said:

> We continue to agree that a trial court **retains the authority to alter a prior plea arrangement up until the time sentence is imposed**, so long as the trial court provides the defendant an opportunity to withdraw any plea that was entered in reliance on the promised sentence. It does not matter whether the judge

17

simply changed his mind, or whether there was a misunderstanding.

Id. (emphasis added).

Thus, although a trial court has the authority to reject a negotiated plea between the parties before it is formally accepted by the court, upon the trial court's acceptance of the negotiated plea and imposition of a sentence consistent with the agreed terms, the trial court no longer retains its authority to "alter a prior plea arrangement."[9] Id. The trial court was bound to abide by, enforce, and ensure compliance with the agreed-upon terms of the plea, and was without discretion to reduce or mitigate the sentence below the mandatory term agreed to by the parties.

In this respect, we find our opinion in State v. Gutierrez, 10 So. 3d 158 (Fla. 3d DCA 2009) controlling. In Gutierrez, the defendant entered into a negotiated plea agreement with the State, which was approved by the trial court. Under the terms of the agreement, defendant was sentenced to 364

---

[9] For this same reason, Rojas' reliance on a statement by the Florida Supreme Court in Goins v. State, 672 So. 2d 30, 31 (Fla.1996) is equally unavailing and taken out of context: "Even though the plea has been accepted and regardless of whether the judge participated in the negotiations, the judge is never bound to honor the agreement." Goins, like Rollman, involved the trial court's rejection of the terms of a negotiated plea before sentence was imposed, not (as here) an after-the-fact disavowal and alteration of the terms of a negotiated plea that the trial court had already accepted, approved and ratified, and upon which the trial court had previously imposed the agreed-upon sentence.

18

days in county jail, followed by one year of community control and three years' probation. After serving less than thirty days, the defendant moved to mitigate his sentence, and the trial court, relying on rule 3.800(c), granted the motion and mitigated the sentence to community control and probation only.

On appeal, we reversed, holding that the trial court "erroneously granted the motion to mitigate and improperly eliminated the incarcerative portion" of Gutierrez's sentence. Id. at 159. We explained:

> Because the plea agreement here imposed upon defendant a specific sentence, defendant cannot circumvent the plea bargain by filing a motion to mitigate. State v. Swett, 772 So. 2d 48, 52 (Fla. 5th DCA 2000) (stating that a defendant's sentence negotiated pursuant to a plea agreement was part of a quid pro quo and, therefore, a defendant "cannot accept the benefit of [a plea] bargain without accepting its burden"); see also Garcia, 722 So.2d at 907 ("A defendant will not be relieved of an obligation that was included as a specific component of a plea agreement that was bargained for and voluntarily entered into by defendant.") (citing Allen v. State, 642 So. 2d 815, 816 (Fla. 1st DCA 1994)).
> 
> ***
> 
> Moreover, the trial court, pursuant to the plea agreement, did not have discretion over defendant's sentence and, therefore, should have denied defendant's motion to mitigate.

Id. See also Arango v. State, 891 So. 2d 1195, 1196 (Fla. 3d DCA 2005) (holding trial court was "without the discretion to reduce the agreed sentence" where "the plea bargain contained a specific agreement on the specific sentence that would be imposed on the defendant, namely, ten years

19

incarceration followed by seven years of probation"); <u>State v. Brooks</u>, 890 So. 2d 503, 505 (Fla. 2d DCA 2005) (holding trial court erred in mitigating defendant's original sentence of three years' imprisonment, which was part of a negotiated plea agreement between the parties and which was approved by the trial court when imposing the original sentence; reversing and remanding for the trial court to reinstate the original sentence).[10]

## **<u>CONCLUSION</u>**

On the State's appeal, we reverse and remand to the trial court with instructions to vacate the orders mitigating Rojas' sentences and to reinstate the sentences originally imposed by the trial court.  On Rojas' cross-appeal, we affirm the trial court's orders finding Rojas in violation of his community control.

Affirmed in part, reversed in part, and remanded with instructions.

---

[10] We affirm Rojas' cross-appeal of the trial court's order finding Rojas in violation of his community control and revoking supervision.  We review the trial court's determination for an abuse of discretion, <u>Correa v. State</u>, 43 So. 3d 738 (Fla. 2d DCA 2010) and conclude that there was competent substantial evidence to support the court's finding that Rojas willfully and substantially violated the terms of his community control.

20

GORDO, J., specially concurring.

I fully concur in my colleague's well-written analysis regarding the trial court's ability to mitigate in this situation. I write separately to highlight that the trial court relied on Florida Rule of Criminal Procedure 3.800(c), titled "Reduction and Modification," which includes the following language:

> **This subdivision shall not be applicable to** those cases in which the death sentence is imposed or **those cases in which the trial judge** has imposed the minimum mandatory sentence or **has no sentencing discretion.**

Fla. R. Crim. P. 3.800(c) (emphasis added).

Looking to the plain language of the rule itself—taking into account that we ought not render any provision of the rule meaningless—the rule clearly provides that it does not apply to those cases in which the trial judge has no sentencing discretion. See Scherer v. Volusia Cnty. Dept. of Corr., 171 So. 3d 135, 139 (Fla. 1st DCA 2015) ("No part of a statute [or rule], not even a single word, should be ignored, read out of the text, or rendered meaningless, in construing the provision."); Gulfstream Park Racing Ass'n, Inc. v. Tampa Bay Downs, Inc., 948 So. 2d 599, 606 (Fla. 2006) ("It is an elementary principle of statutory construction that significance and effect

21

must be given to every word, phrase, sentence, and part of the statute if possible, and words in a statute should not be construed as mere surplusage." (quoting Hechtman v. Nations Title Ins. of N.Y., 840 So. 2d 993, 996 (Fla. 2003))).

As Judge Emas aptly points out, written plea agreements with such unambiguous language ratified by the trial court are examples in which the trial court no longer has sentencing discretion. Here, the plea agreement unambiguously stated that Rojas would be sentenced to no less than ten years on the 2017 case and five years in state prison on the 2019 case if he violated community control and was precluded from filing a motion to mitigate. The plea agreement was formally approved and accepted by the trial court. The trial court did not have any discretion to deviate from the terms of the plea agreement under these factual circumstances. See State v. Hall, 2022 WL 17331643, at *2 (Fla. 2d DCA Nov. 30, 2022) ("Because the trial court could not undo [the Defendant's] negotiated sentences, the mitigated sentences are illegal. In other words, the trial court could not unilaterally modify a contract to which it was not a party."); State v. Howell, 59 So. 3d 301, 302 (Fla. 5th DCA 2011) ("[T]he trial court lacked the discretion to modify the sentence previously imposed pursuant to the plea agreement [between the State and the defendant]."); Arango v. State, 891

22

So. 2d 1195, 1196 (Fla. 3d DCA 2005) ("Since the plea bargain here did not give the trial court any discretion over the length of the sentence, it follows that the trial court would be without the discretion to reduce the agreed sentence."). Therefore, as the plain language of rule clearly establishes it is inapplicable where a trial court has no sentencing discretion, it was error for the trial court to rely on rule 3.800(c) to mitigate Rojas' sentence.