# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-2751
_____

ERIN VONTEZ THOMPSON,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Russell L. Healey, Judge.

May 17, 2018

PER CURIAM.

The trial court revoked Appellant's probation because she paid nothing toward probation costs, court costs, or drug testing for almost two years. Because the record reflects competent, substantial evidence to support the trial court's ruling, and we find no abuse of discretion, we affirm.

## Facts

Appellant pleaded guilty to second-degree felony neglect of the younger of her two children, then ages 2 and 5, whom a neighbor found wandering alone outside their apartment while Appellant was gone for half a day in January of 2015. Through counsel, she stipulated to a factual basis for her guilty plea. This felony carried a maximum sentence of up to fifteen years in prison. § 827.03(1)(e), Fla. Stat. (2015) (defining child neglect); § 775.082(3)(d) (establishing permissible sentence).

Based on Appellant's plea of guilty to felony child neglect, the trial court withheld adjudication and sentenced Appellant to two years of probation. She was required to pay $917 in specified court costs/fines and $41.60 a month in costs of supervision, to "work diligently at a lawful occupation . . . and support any dependents to the best of your ability," comply with her parenting case plan with the Department of Children and Families, obtain a mental health evaluation, and submit to and pay for random drug testing. In her application for indigent status, Appellant indicated that she had no debts or liabilities.

In April 2017, near the end of her two-year probation period, Appellant came before the same trial judge on an affidavit of violation of probation alleging Appellant's complete failure to pay anything toward her $917 in court costs, $960 in costs of supervision, and $30 for drug testing. The Department of Corrections apparently waived the $960 costs of supervision—which the trial court criticized (in no uncertain terms). That left $947 in court costs and drug testing costs toward which Appellant had paid nothing in two years—"not a nickel," as the trial court described it and defense counsel agreed.

The probation officer recommended incarceration, noting among other things Appellant's prior record of failing to pay costs of probation. Appellant had a felony record of grand theft committed in 2011, a third-degree felony. For that prior felony, Appellant was placed on probation, which she violated by failing to make required payments and failing to complete community service hours. For that violation of probation, she was sentenced to 100 days in jail, and did not appeal.

By the time of the hearing, Appellant had a third child, then four months old. She testified that she received some child support from the children's fathers, one of whom was incarcerated; and had "child support orders out on them" for unpaid support. She received food stamps, and paid no rent or utilities because her housing was government subsidized.

Under direct examination by the state, Appellant admitted that she had not paid anything toward her costs. Appellant's counsel brought up the question of employment on cross-examination. Appellant denied having had any jobs until very

2

recently, a week or two before the hearing. On redirect the state followed up on the employment questions, and then Appellant admitted that she had an under-the-table job cleaning the professional football stadium in Jacksonville after home football games. She quit because it was "nasty" and "a lot" of work, and therefore "it wasn't working out." She did not use any of that money to pay anything toward her probation obligations. She testified that she had been looking for work, but did not work while dealing with her dependency case during the first year of probation (presumably as a result of the felony child neglect charge), and was sick for several months of her pregnancy during the second year of probation. She presented no medical argument or evidence that she could not work at all during her pregnancy or at any other time during her probation.

Appellant's probation officer testified that Appellant was required to submit monthly job-search logs. Over the two years of her probation, however, Appellant returned only two logs. Both were blank. It was not until shortly after a Notice to Appear was issued on Appellant's violation of probation that she got a job. She was making $8.50 per hour, and had just received her first paycheck the day before the violation of probation hearing. She did not pay or offer to pay anything toward her probation obligations out of that paycheck.

After Appellant and her probation officer testified, defense counsel rested and offered to present argument. The trial court stated that argument was not necessary. He found that Appellant had willfully and substantially violated her probation, orally announcing his ruling of a willful and substantial violation twice, as follows (emphasis added):

> I'm going to find that Ms. Thompson is in *substantial and willful violation* of her probation for failing to even attempt to get a job. And based on her testimony that she actually did have an under-the-table job, could have paid something, just something, a dollar, $10, something. She paid absolutely nothing. And based on her testimony that she just decided to sit there and do nothing while she was working on her DCF plan,

3

again, I'm going to find that she's in *substantial and willful violation* of probation.

The trial court revoked Appellant's probation and adjudicated her guilty of felony child neglect pursuant to her earlier guilty plea. Despite the statutory maximum sentence of up to fifteen years in prison for felony child neglect, the trial court sentenced Appellant to only six months in county jail with credit for the three days she was in jail after her arrest before bonding out.

Appellant does not dispute her complete failure to pay or that the trial court found she had the ability to pay and willfully refused to do so. She argues that the revocation for failure to pay monetary obligations was improper because there was evidence that her failure to pay was not willful or substantial; and there was other evidence besides what the trial court relied on, in that she complied with other terms of her probation. We find her argument meritless.

### Standards for Willfulness and Revocation

On a violation of probation for nonpayment, the state has the initial burden of showing nonpayment and willfulness, by a preponderance of the evidence. § 948.06(5), Fla. Stat. (2015); *Brown v. State*, 221 So. 3d 731, 733 (Fla. 1st DCA 2017). Willfulness arises from a refusal to pay despite an ability to do so. *See Aviles v. State*, 165 So. 3d 841, 843 (Fla. 1st DCA 2015) (citing *Del Valle v. State*, 80 So. 3d 999, 1012 (Fla. 2011)). Willfulness also arises from a failure to make "all reasonable efforts" or "sufficient bona fide efforts legally to acquire the resources to pay." *See Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983); *Del Valle*, 80 So. 3d at 1005-06 (citing standard set forth in § 948.06(5), Fla. Stat.); *see also Haywood v. State*, 987 So. 2d 1285, 1287 (Fla. 1st DCA 2008).

Once the state has shown nonpayment and willfulness, the burden shifts to the defendant to prove by a preponderance of the evidence "that he or she does not have the present resources available to pay restitution or the cost of supervision *despite sufficient bona fide efforts legally to acquire the resources to do*

4

*so.*" § 948.06(5), Fla. Stat. (emphasis added); *Del Valle*, 80 So. 3d at 1002, 1015 (approving shifting of burden to defendant and preponderance standard). The trial court must inquire into the reasons for the defendant's inability to pay. *Bearden*, 461 U.S. at 672-73; *Del Valle*, 80 So. 3d at 1002. Willfulness does not exist if a probationer makes "all reasonable efforts to pay the fine or restitution, and yet cannot do so through no fault of his own." *Del Valle*, 80 So. 3d at 1005-06 (quoting *Bearden*, 461 U.S. at 668-69).

If the defendant fails to satisfy the burden of proof, incarceration is "perfectly justified." *Bearden*, 461 U.S. at 668. Upon finding a willful and substantial violation, the trial court then has broad discretion to make the ultimate decision of whether to revoke probation. *Brown*, 221 So. 3d at 733 (citing *Lawson v. State*, 969 So. 2d 222, 229 (Fla. 2007)). If the trial court revokes probation, the court "shall adjudge the probationer or offender guilty of the offense charged and proven or admitted, unless he or she has previously been adjudged guilty, and impose any sentence which it might have originally imposed before placing the probationer or offender on probation or into community control." § 948.06(2)(e), Fla. Stat.

This Court reviews the trial court's findings for competent, substantial evidence. *Brown*, 221 So. 3d at 733-34. We review the trial court's disposition for an abuse of discretion. *Del Valle*, 80 So. 3d at 1009; *Savage v. State*, 120 So. 3d 619, 621-24 (Fla. 2d DCA 2013) (separating the CSE standard for willfulness from abuse of discretion as to ultimate revocation).

### CSE of Willfulness

Among Appellant's probation obligations was the standard requirement that she "work diligently at a lawful occupation . . . and support any dependents to the best of your ability." Even though she was not separately charged with a violation of this requirement, Appellant's lack of effort to obtain employment is directly relevant to whether she made reasonable efforts to comply with the financial terms of her probation. *Willis v. State*, 141 So. 3d 611, 612 (Fla. 4th DCA 2014) ("Such evidence may include a showing that the probationer failed to make 'bona fide' efforts to gain employment and/or legally acquire the resources to pay."). While the dissent asserts fundamental error in the trial

5

court's consideration of Appellant's failure to make reasonable efforts to get and keep a job even though Appellant was not separately charged with violating her probation for failure to submit completed job-search logs, the law is clear that Appellant had the burden to prove that she expended "*sufficient bona fide efforts legally to acquire the resources*" to satisfy her financial obligations. § 948.06(5), Fla. Stat. (emphasis added). This requirement reflects the economic reality of a direct connection between employment and ability to pay, and between good-faith effort and gainful employment.

The trial court had before it competent, substantial evidence that Appellant made no reasonable efforts for nearly two years to comply with the monetary obligations of her probation. Appellant injected the issue when she asserted lack of a job as the reason she could not pay her costs. She submitted only two job-search logs in two years, and both of those were blank. She admitted she did not want to work while her dependency case was going on. She was not pregnant during the majority of her probationary period, and gave no legitimate medical reason why she could not work while on probation. She had an under-the-table job, but chose to leave it. She did not get another job until after a Notice to Appear was issued on her violation of probation, and then was able to get a job very quickly. She did not use or offer to use any money gained from those jobs to pay anything at all toward her probation obligations. This evidence was sufficient to establish willfulness and to support the trial court's discretionary decision to revoke Appellant's probation.

Appellant's sole argument on appeal is that the trial court unfairly revoked probation because Appellant completed other terms of her probation—an argument the dissent adopts and then expands broadly. We reject this argument, because if there is competent substantial evidence to support the trial court's conclusions, it is irrelevant that there may be additional evidence to the contrary. The evidence before the trial court was legally sufficient to support the findings of willfulness.

Although the dissent goes far beyond any argument the Appellant preserved, and among other things attacks the lack of an express written finding of willfulness, Appellant concedes that

6

the finding was necessarily made—as it was, because it was expressed orally twice and was clearly the foundation of the ruling: "I'm going to find that Ms. Thompson is in *substantial and willful violation* of her probation . . . ." (Emphasis added.) An oral finding suffices. *See, e.g., Bittle v. State,* 100 So. 3d 1194, 1194 (Fla. 4th DCA 2012) (approving an oral finding of willful and substantial violation); *Kadyebo v. State,* 15 So. 3d 928, 928 (Fla. 5th DCA 2009) (recognizing oral pronouncement of willful and substantial violation as supported by competent substantial evidence); *Baldwin v. State,* 855 So. 2d 1180, 1180 (Fla. 1st DCA 2003) (affirming revocation where competent substantial evidence supported an oral pronouncement of willfulness).

Also contrary to the dissent's sua sponte suggestion of a constitutional deprivation, there is not and never has been any requirement that the trial court on a violation of probation obtain anything remotely approaching a financial affidavit or balance sheet before determining ability to pay. The trial court is required to inquire into ability to pay. The trial court did so. Appellant testified that her basic living expenses were government-subsidized (food stamps plus HUD-paid housing and utilities). She received at least some child support from the fathers of her three children and had taken steps to enforce the child support obligations. She had the ability to work but chose not to work, except for a short-term under-the-table job from which she paid nothing toward her probation obligations, and chose to quit. Once the Notice to Appear was issued, however, she very quickly found a job, strongly suggesting that she could have done so earlier if she had felt sufficiently motivated. She was able to come up with the money to post bond of over $500 when she was arrested for felony child neglect, and to pay the $50 application fee for criminal indigent status, on which application she indicated she had zero debts or liabilities.

These facts are materially distinguishable from the cases cited by the dissent, in which there was no evidence of ability to pay or no finding of willfulness. The trial court's inquiry was sufficient, and the record reflects competent, substantial evidence that Appellant had the ability to work and had the ability to pay something toward her obligations, even if not in full. This is not a situation of a probationer trying to pay her obligations, yet

7

through no fault of her own, being unable to do so. *See Del Valle*, 80 So. 3d at 1005-06.

## No Abuse of Discretion in Revoking

The willful violation question now resolved, the only question remaining is whether the trial court abused its discretion in revoking probation. This is the core of the dissent's argument, which results from a disagreement as to the trial court's exercise of discretion, coupled with a selective view of the facts. Despite the dissent's protestations to the contrary, we are not unaware of the social dynamics at play here, of which the trial court likewise was well aware. Yet, the evidence showed that Appellant, though able to work, failed to exercise reasonable efforts to maintain employment, simply quit one job, and used none of the little money she did earn to pay toward her obligations, all the while receiving food stamps, rent, and utilities at public expense. She had done it before, on probation from her earlier grand theft felony, and was incarcerated as a result. In this new violation, there was competent, substantial evidence of a willful refusal to comply with monetary obligations. The underlying child neglect felony could have resulted in imprisonment of up to fifteen years, yet the trial court imposed sentence of only six months in county jail. The trial court acted within its broad discretion in the context of the facts before it.

We cannot say the decision to revoke probation was arbitrary or fanciful—one no reasonable jurist could make. *See generally Canakaris v. Canakaris*, 382 So. 2d 1197, 1203 (Fla. 1980) (defining abuse of discretion). Evaluating the evidence and Appellant's credibility and demeanor were the exclusive province of the trial court, and we must give great deference to the trial court's superior vantage point. *See Savage*, 120 So. 3d at 622; *Riggins v. State*, 830 So. 2d 920, 921 (Fla. 4th DCA 2002). The dissent's emphasis on the trial court's oral comments at the hearing is misplaced. The trial court heard the evidence, observed and evaluated Appellant, and exercised discretion to determine that revocation was proper in this instance. Within our standards of review—which the dissent would have us ignore—no legitimate basis for reversal exists.

8

Accordingly, we affirm Appellant's judgment and sentence. We also note that the parties agree that an incorrect statutory reference to section 784.07(2)(b) was added to Appellant's judgment in error upon revocation. The trial court is directed to enter a corrected judgment.

AFFIRMED. REMANDED for correction of scrivener's error in judgment.

WETHERELL and KELSEY, JJ., concur; MAKAR, J., dissents with opinion.

---

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

---

MAKAR, J., dissenting.

Twenty-two-year-old Erin Vontez Thompson left her two- and five-year-old children at home unattended, resulting in a charge of child neglect. Pursuant to her guilty plea and negotiated sentence dated June 19, 2015, Thompson was placed on probation for twenty-four months and—along with other conditions—was required to pay for total court costs of $917, a $40 monthly fee plus a 4% surcharge to cover the supervision costs of the Department of Corrections, and the cost of any random drug tests. Thompson was and continues to be financially indigent.

As her two-year probationary period was about to end, the Department reported on April 18, 2017 that Thompson was in violation of probation for failing to pay three items: (a) court costs; (b) supervision costs totaling $960; and (c) a recent drug test charge of $30. She was appointed a public defender, and a hearing date was set. The burden was on the State to establish that Thompson engaged in a substantial and willful violation of these conditions of probation. *Del Valle v. State*, 80 So. 3d 999, 1011-12 (Fla. 2011).

9

At the revocation hearing, Thompson testified without contradiction that she had met all the conditions of probation (completion of a case plan, mental health evaluations, random drug tests, and so on), but she "didn't have the money to pay all the fees." When asked if she had the ability to pay the fees in the past two years, she answered "No, I didn't," but said she would have paid if she had the money to do so. She had no assets, lived entirely on food stamps and public housing/utility allowances, and received no child support (the two dads contribute only "whenever they feel like it"). Until recently, she had no job other than a transitory one cleaning the local stadium after Jaguars® football games that paid her $7.50/hour "under-the-table." She explained that she was too sick to work during most of her pregnancy (at the time of the hearing, her third child was four months old) and that she tried to get work while managing her dependency case, but only had the temporary stadium job. Her probation officer testified that the Department gives probationers job search logs to be turned in monthly; only two had been received, both blank.

At that point, the trial judge denied the public defender's request to make legal argument ("I don't need any argument") and ruled that Thompson engaged in a "substantial and willful violation of her probation for failing to even attempt to get a job." In addition, he concluded that she should have "paid something, just something, a dollar, $10, something" from her "under-the-table" job. He adjudicated her guilty, sentenced her to six months in the Duval County jail, and converted the court costs into a civil judgment (the Department waived the others, discussed below). The public defender pointed out that Thompson's only alleged violation was not paying the costs/fees, not that she was required to have or maintain a job—to which the trial judge said, "she could have just manufactured the money, for all I care. She was required to pay the money and she didn't do it. Didn't even pay a nickel. There you go." Other than the judge's statements at the hearing, no factual findings—written or otherwise—were made in support of revocation.

On appeal, Thompson argues that the trial court erred in finding a substantial and willful violation of the condition that she pay court costs because no evidence showed, and no finding

was made, that Thompson had the ability to pay the costs and purposefully failed to do so.[1] *See Aviles v. State*, 165 So. 3d 841, 843 (Fla. 1st DCA 2015) ("In probation revocation proceedings for failure to pay a monetary obligation as a condition of probation, the trial court must find that the defendant's failure to pay was willful—i.e., the defendant has, or has had, the ability to pay the obligation and purposefully did not do so.") (quoting *Del Valle*, 80 So. 3d at 1012).

"Ability-to-pay" and "willful refusal" are standards that must be met under "both state and federal constitutional requirements" of equal protection and due process. *Del Valle*, 80 So. 3d at 1005, 1011-12 (both "ensure that an indigent probationer is not incarcerated based solely upon inability to pay a monetary obligation."); *see Hamrick v. State*, 519 So. 2d 81, 82 (Fla. 3d DCA 1988) (showing that probationer could reasonably pay "is one of constitutional dimensions which, since the defendant would otherwise be subject to jail simply for not paying an amount due regardless of the circumstances, subverts the requirements of due process and equal protection and the prohibition of imprisonment for debt.") *upheld by Stephens v. State*, 630 So. 2d 1090, 1091 (Fla. 1994). Indeed, revoking probation for a failure to pay court costs is fundamental error absent the necessary findings. *See, e.g.*, *Odom v. State*, 15 So. 3d 672, 679 (Fla. 1st DCA 2009) ("Because ability to pay is an essential element for a finding that a probationer willfully violated probation for failure to pay supervisory costs, the revocation of Appellant's probation based on the alleged violation . . . constitutes fundamental error."). As our supreme court

---

[1] The majority says that Thompson's "sole argument on appeal" is that probation was "unfairly revoked" because she "completed other terms of her probation," but that's inaccurate because the only term of probation at issue is court costs. Thompson summarized her argument, saying that the trial court "erred in finding a willful and substantial violation of probation and in revoking probation and imposing jail based solely on [Thompson's] failure to pay monetary obligations. The evidence did not show [Thompson] had the ability to pay costs and that she willfully refused to do so." That's it.

recently emphasized, a "probationer cannot have his probation constitutionally revoked absent an inquiry into ability to pay *and* a specific finding of willfulness, and a trial court's failure to conduct such an inquiry *or* make such a finding cannot be deemed harmless." *Del Valle*, 80 So. 3d at 1011.

For decades, and consistent with constitutional principles, this Court has held that there must be a *specific* and *explicit finding* of ability to pay and a willful refusal to make payment. *Crowley v. State*, 124 So. 3d 434, 436 (Fla. 1st DCA 2013) ("A trial court cannot revoke probation for failure to pay court costs without first *explicitly finding* that a defendant had the ability to pay and willfully refused to do.") (emphasis added); *Friddle v. State*, 989 So. 2d 1254, 1255 (Fla. 1st DCA 2008) ("[T]he trial court did not make a *specific finding* as to appellant's ability to pay restitution.") (emphasis added); *McPherson v. State*, 530 So. 2d 1095, 1098 (Fla. 1st DCA 1988) ("Because the trial court failed to make a *specific finding* that appellant had the ability to pay these costs, it erroneously revoked appellant's probation on these grounds.") (emphasis added); *Depson v. State*, 363 So. 2d 43, 44 (Fla. 1st DCA 1978) (trial court "must make an *affirmative finding* that the indigent defendant's financial condition is such that payment can be made before entering a revocation on this ground.") (emphasis added); *Jones v. State*, 360 So. 2d 1158, 1160 (Fla. 1st DCA 1978) ("The court should make findings of facts concerning the aforementioned and should *specifically determine* whether appellant had the ability to pay costs during the probationary period.") (emphasis added).

Inference and conjecture—whether by trial or appellate courts—are no substitute for a proper inquiry and specific and explicit findings as to the constitutionally required elements of ability to pay and willfulness; absent these protections, society would be denying basic rights and creating a debtor's prison, which our state constitution explicitly forbids. *Del Valle*, 80 So. 3d at 1005 (holding that imposing burden on probationer to prove inability to pay by clear and convincing evidence creates constitutionally unacceptable risk of violating article I, section 11 of the Florida Constitution, which states that "[n]o person shall be imprisoned for debt, except in cases of fraud."). As this Court recently said on two occasions, we are precluded from making

12

inferences, and must look solely to whether a proper inquiry was conducted, and whether specific factual findings were entered and supported by sufficient record evidence. *Crowley*, 124 So. 3d at 436; *Giambrone v. State*, 109 So. 3d 1279, 1280 (Fla. 1st DCA 2013). Doing otherwise skates over thin constitutional ice.

As to Thompson, no written findings—let alone specific findings—were made, nor was there an attempt to establish that she had the ability to pay and willfully refused payment. The verbal finding—that Thompson "fail[ed] to even attempt to get a job"—is directly contradicted by the trial judge saying she should have paid "something" from her "under-the-table" job; it is also contradicted by her recently obtained job, which was ignored. No evidence, let alone competent substantial evidence, supports the claim that Thomson made no effort, had no work, and—most pertinent—that she had the financial ability to pay the $917 court costs but willfully refused. The only other verbal finding as to ability to pay was that Thompson should have "paid something" from her "under-the-table" job, but that is no substitute for a specific finding that Thompson had the ability to pay and willfully did not. The trial court's superior vantage point matters little when its findings are insupportable and its inquiry fails to follow constitutional standards.

At most, the record shows an impecunious young mother of three preschoolers living entirely on governmental assistance who, over two years of probation, was ill during six months of her pregnancy, earned a tiny sum of cash in a short-lived "under-the-table" job, and a smaller sum in her recently obtained job. But no inquiry or finding was made as to her ability to pay the court costs. *See Crowley*, 124 So. 3d at 436 ("The record reflects that Crowley testified that he was unemployed, lived with his mother, received food stamps, and paid no rent or utilities. . . . There is no evidence affirmatively showing that Crowley had the means to pay the required court costs, or that he willfully refused to pay them."). Simple economic realities suggest that a household overseen by an impoverished twenty-something single mom with three young children subsisting on government programs in a challenging job market is not a great candidate for significant discretionary cash flow, making an adequate inquiry into and a specific finding of the financial ability to pay even more

13

important. *See, e.g.*, *Allen v. State*, 662 So. 2d 380, 381 (Fla. 4th DCA 1995) (revoking probation where probationer did not have a job "'would be contrary to the fundamental fairness required by [the due process and equal protection clauses of] the Fourteenth Amendment'") (quoting *Bearden v. Georgia*, 461 U.S. 660, 673 (1983)). Thompson's personal choices, both as to the oversight of her children and her limited past employment, place her judgment and initiative in doubt; she bears responsibility for her predicament. But the sole legal inquiry is whether she had the ability to pay the court costs and failed to do so willfully.[2]

The trial court nonetheless leap-frogged to the legal conclusion that Thompson should have paid some amount, if only a trifle, to avoid jail; but he failed to heed the Supreme Court's directive that "in revocation proceedings for failure to pay a fine or restitution, *a sentencing court must inquire into the reasons for the failure to pay*." *Bearden*, 461 U.S. at 672 (emphasis added); *see also Stephens*, 630 So. 2d at 1091 (applying *Bearden*).

No inquiry was made to assess Thompson's overall financial situation, what debts she owed, and so on. Balance sheets have assets and liabilities; income statements have revenues and expenses. But only one side of Thompson's financial ledger was considered (her limited income), which paints a wholly incomplete and flawed picture of her economic status. For all we know, she may be in arrears on sizable household-related bills or be debt-free. Nor was any inquiry made as to how she used the

---

[2] The majority's recitation of Thompson's prior criminal record (which no party mentioned or relied upon) would seem to have no bearing as to whether she had the ability to pay court costs at the time of the revocation hearing in this case; whether she's had subsequent run-ins with the law are likewise impertinent. Our sole task is to decide whether the trial court's finding of a willful and substantial violation—without determining Thompson's ability to pay given her indigent status—was error. It is no solace, therefore, that the trial court twice pronounced a "willful and substantial violation" in his verbal ruling; the phrase is merely a legal conclusion, one that must be based on specific and explicit findings of ability to pay and a willful refusal to do so.

"under-the-table" money, and whether such use was unreasonable in her destitute circumstances. For all we know, she used the "under-the-table" money to buy necessities for her children—or frittered it away on lottery tickets. Just like in *Giambrone*, "[n]either the State, nor the trial court inquired of [the probationer] as to [her] income *or expenses or the reason for [her] failure to make the required payments* toward the cost of [her] supervision." 109 So. 3d at 1280 (emphasis added). Speculation must abound to fill critically important evidentiary gaps.

Simply because a financially indigent mom receives a smidgen of cash from a part-time seasonal janitorial job doesn't mean she can spare a dime in the face of pressing family financial duties or debts. Even the Department of Corrections—in apparent recognition that Thompson was financially indigent and unable to pay supervision fees—*waived* them just before the hearing.[3] The trial judge expressed anger at the Department for doing so,[4] and made offhand comments to the public defender for

---

[3] The statutory basis upon which the Department could have waived Thompson's payment of supervision costs is that it would be an undue hardship given her responsibilities to her three dependents. § 948.09(3)(e), Fla. Stat. (2018) (Department may exempt a probationer from the payment of such costs if she "is responsible for the support of dependents, and the payment of such contribution constitutes an undue hardship on [her].").

[4] Upon learning the Department had waived its supervision costs, the trial judge went on a tirade, saying: "I'm going to waive the costs of supervision in every single case I get where I put somebody on probation. . . . What we'll do is we'll do it on the front end and I'll waive it for you and we won't ever have to worry about that part of things ever again. . . . I guess [Department officials] don't need money to run that department. They are just going to take our tax dollars to run that department and they're not going to charge people that they're supervising to do it. They're going to make somebody else pay for it. . . . Why don't they take it out of their paycheck? It's ridiculous."

15

his role in obtaining the waiver ("How lovely"). Court costs, however, were "another story," which were the only item that was reduced to a civil judgment (the drug test charge was excluded, presumably waived by the Department).

A deep irony is that Thompson had just gotten gainful employment (as an "inventory associate" at an inventory and data collection company for $8.50/hour), which the trial judge disregarded. Whatever her prior financial circumstances, she had a decent job at the time of the hearing (she'd just received her first paycheck of about $110 the prior day), and could potentially contribute toward the $917 civil judgment for court costs, but her incarceration swept that option away (a double irony because it imposed a far greater expense on society in the form of county tax dollars spent on Thompson's imprisonment[5] and the collateral impact—economic and otherwise—on Thompson's children and those charged with their interim care). Trial judges have a responsibility to consider alternative measures other than incarceration, *Bearden*, 461 U.S. at 672, but that did not happen here. And the Department should have taken action earlier, *see*

---

[5] Putting Thompson in jail imposed costs on the county far in excess of the court costs she owed. For fiscal year 2014, the average annual cost per inmate in three Florida counties was: Miami-Dade ($63,831), Palm Beach County ($58.010), and Volusia County ($25,586). *See* VERA INSTITUTE OF JUSTICE, THE PRICE OF JAILS: MEASURING THE TAXPAYER COST OF LOCAL INCARCERATION 26-31 (May 2015); *see also* FED. REG., ANNUAL DETERMINATION OF AVERAGE COST OF INCARCERATION, 81 Fed. Reg. 46957 (July 19, 2016) ("The fee to cover the average cost of incarceration for Federal inmates in Fiscal Year 2015 was $31,977.65 ($87.61 per day)."); *Fiscal Statistics*, FLA. DEP'T OF CORR., http://www.dc.state.fl.us/oth/Quickfacts.html (last updated December 2017) ("It costs $55.80 a day or $20,367 per year to house an inmate in a Florida prison during FY 2016-17. Cost per day to supervise an offender on community supervision (without electronic monitoring): $5.52."). Even at the lowest of these averages, the pro-rated cost of six months in county jail was over tenfold the $917 court costs.

*generally Jones*, 360 So. 2d at 1160 (probationer should be advised about exemptions and Department should bring alleged violation to court's attention early on "rather than, as here, waiting until almost two years have elapsed before alleging a violation of probation has occurred for [failure to pay supervision costs]"), but that didn't happen either.

Finally, the trial judge's action punished Thompson for not turning in monthly job search logs, but that was neither a charged basis for revocation[6] nor even a condition of probation. Only the failure to pay the three categories of costs was specified in the Violation Report, making the trial court's uncharged grounds for revocation invalid; indeed, it is fundamental error. *Haywood v. State*, 987 So. 2d 1285, 1287 n.2 (Fla. 1st DCA 2008) ("The trial court lacked authority to revoke probation on grounds not alleged in the affidavit. A trial court's revocation of probation based on uncharged grounds constitutes fundamental error."). And the failure to turn in job search logs "is not a proper basis for revocation." *Aviles*, 165 So. 3d at 843 (failure to submit job search logs, even if ordered to do so by probation officer, is an invalid basis for revocation where it is not imposed as a condition of probation when sentenced).

Under these circumstances, where no findings were made that a financially destitute probationer had the ability to pay costs, no inquiry was made as to the reasons for her failure to do so, no alternatives other than incarceration were considered, and revocation was based on an improper and uncharged ground, an abuse of discretion is manifest. *State v. Carter*, 835 So. 2d 259, 262 (Fla. 2002) ("[T]he appellate court must determine whether or not the trial court acted in an arbitrary, fanciful or unreasonable manner in determining that Carter's violation was both willful and substantial."). On this record, incarcerating a

---

[6] One of the fourteen special conditions of probation was that Thompson would "work diligently at a lawful occupation, advise [her] employer of [her] probation status, and support any dependents to the best of [her] ability, as directed by [her] officer," but it did not require job search logs and the Department did not claim the condition as a ground for revocation.

financially indigent mother of three for failing to pay $917 of court costs goes beyond unreasonable; it harkens back to Anatole France's adage that the "law, in its majestic equality, forbids the rich as well as the poor to sleep under bridges, to beg in the streets, and to steal bread." *Griffin v. Illinois*, 351 U.S. 12, 23 (1956) (Frankfurter, J., concurring).

————————————————

Andy Thomas, Public Defender, and Joel Arnold, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Barbara Debelius, Assistant Attorney General, Tallahassee, for Appellee.