DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

SERGIO ARIBU,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D2024-1911

_____

July 2, 2025

Appeal from the Circuit Court for Manatee County; Frederick P.
Mercurio, Judge.

Blair Allen, Public Defender, and Megan Banfield, Assistant Public
Defender, Bartow, for Appellant.

James Uthmeier, Attorney General, Tallahassee, and William A. Leto,
Assistant Attorney General, Tampa, for Appellee.

MORRIS, Judge.

Sergio Aribu appeals the revocation of his probation and resulting
sentence for aggravated assault with a deadly weapon.  Because the trial
court erred in determining that Aribu violated special condition one of his
probation and because the record is not clear that the trial court still
would have revoked probation and imposed the same sentence based on

the remaining violations, we reverse the revocation of his probation and remand for reconsideration.

In considering whether to revoke probation, "[t]he trial court must first determine whether the State proved by the greater weight of the evidence that the probationer willfully and substantially violated probation." *Savage v. State*, 120 So. 3d 619, 621 (Fla. 2d DCA 2013) (citing *Del Valle v. State*, 80 So. 3d 999, 1012 (Fla. 2011)). If a trial court makes such a finding and revokes probation, then "on appeal, we first assess whether the finding of a willful and substantial violation is supported by competent substantial evidence." *Id.* "[O]ur standard of review for the trial court's decision to revoke probation is abuse of discretion." *Id.* at 623.

The State carries the burden to prove that a violation was both willful and substantial. *Weaver v. State*, 335 So. 3d 774, 776 (Fla. 2d DCA 2022) (relying on *Jones v. State*, 730 So. 2d 349, 351 (Fla. 4th DCA 1999)). "[R]evoking a probationer's probation based on an unproven violation . . . constitutes fundamental error." *Id.* at 777. "A defendant's failure to comply with a probation condition is not willful where his conduct shows a reasonable, good faith attempt to comply . . . and factors beyond his control, rather than a deliberate act of misconduct, caused his noncompliance." *Selig v. State*, 112 So. 3d 746, 749 (Fla. 2d DCA 2013) (quoting *Soto v. State*, 727 So. 2d 1044, 1046 (Fla. 2d DCA 1999)); *see also Jacobsen v. State*, 536 So. 2d 373, 375 (Fla. 2d DCA 1988).

Special condition one required Aribu to receive a mental health evaluation and treatment if necessary. The evidence presented at the revocation hearing reflected that the probation officer instructed Aribu on that condition but that Aribu failed over a four-month period to comply.

2

The probation officer testified that Aribu told her that he needed to check with the provider who conducted such evaluations to see if his health insurance was accepted. The probation officer testified about the instructions she gave to Aribu regarding making an appointment and providing proof that an appointment was made, but Aribu failed to provide such proof and never informed her that he scheduled an evaluation. The probation officer acknowledged that Aribu told her that he was receiving disability payments, but the probation officer testified that probationers have to submit proof of such payments in order to have the costs of the evaluation waived. Aribu never provided proof of his receipt of disability payments according to the probation officer.

Aribu testified that he told the probation officer that he had to check to see if the provider accepted his health insurance. He also testified that he went to the provider on May 6, 2024, and that he scheduled an appointment for June 6, 2024, which happened to be the day after he was arrested for violating his probation. He testified that on the day of his arrest, he showed the probation officer proof of his appointment: a patient number stated in an email. Aribu testified that he pays his rent with his social security benefits and that his health insurance card provides him with $270 per month.

After the trial court found Aribu in willful violation of special condition one, along with violations of two other conditions (living without violating the law and not using intoxicants to excess or possessing any drugs or narcotics), the trial court inquired into Aribu's living situation. Aribu explained that he lived in a hotel and that he had "paid ahead on his rent." When asked whether he worked, Aribu explained that he received disability payments. Aribu told the trial court that he did not participate in any type of mental health care or

3

counseling because "before I called the health insurance, I tried to save money." He also told the trial court that "doctors are expensive" and that "rent is also a lot." Aribu then denied receiving social security benefits and disability benefits, stating that "all I have is Medicaid and Medicare."

The trial court then inquired with the probation officer about the economic impact of requiring Aribu to obtain the mental health evaluation. The probation officer estimated that it cost "a hundred and something dollars" for which there were no vouchers, and the probation officer testified it was an "out-of-pocket expense." When the trial court inquired about waiving the cost of the evaluation, the probation officer explained that the provider expected prepayment and that that was the provider that the probation office typically used.

Ultimately, the trial court determined that Aribu "had more than sufficient time to sign up [and] pay for attendance [and to] successfully complete on the first attempt the [mental health] evaluation at a minimum." Thus Aribu's failure to obtain the mental health evaluation and any necessary treatment formed part of the basis for the revocation of his probation and resulting sentence.

Relevant here is the principle that "when a monetary obligation is a condition of a defendant's probation, his failure to pay is willful if he 'has, or has had, the ability to pay the obligation and purposefully did not do so.' " *Faison v. State*, 358 So. 3d 1274, 1277 (Fla. 1st DCA 2023) (quoting *King v. State*, 268 So. 3d 936, 938-39 (Fla. 1st DCA 2019)). "In other words, a defendant's failure to satisfy a condition of probation is not willful if he failed to do so because he could not pay for it." *Id.* Only where the State meets its initial burden of proving the defendant willfully failed to pay does the burden shift to the defendant to prove he made sufficient bona fide efforts to pay but still did not have the resources to

4

do so.  *Id.* (citing *Thompson v. State*, 250 So. 3d 132, 135-36 (Fla. 1st DCA 2018)).

In order to revoke probation based on failure to pay a monetary obligation that is a condition of probation, the trial court must inquire whether the defendant has or had the ability to pay and must make an explicit finding of willfulness.  *Herrera v. State*, 286 So. 3d 867, 872 (Fla. 2d DCA 2019) (citing *Del Valle*, 80 So. 3d at 1011).  A defendant is entitled to a favorable determination on an alleged violation of a monetary obligation where there is no evidence that the trial court made such an inquiry.  *Id.*  Further, Florida courts hold that a trial court <u>must make a finding</u> that the probationer has or had the ability to pay; otherwise a reversal is required.  *See, e.g., Stephens v. State*, 630 So. 2d 1090, 1091 (Fla. 1994) ("[B]efore a person on probation can be imprisoned for failing to make restitution, there must be a determination that that person has, or has had, the ability to pay but has willfully refused to do so."); *Brown v. State*, 6 So. 3d 671, 672 (Fla. 2d DCA 2009) (involving failure to pay costs of supervision); *King*, 268 So. 3d at 938-39 (involving failure to pay for sex offender treatment); *Aviles v. State*, 165 So. 3d 841, 843 (Fla. 1st DCA 2015) (involving failure to pay court costs, restitution, and drug testing costs).  "[R]evocation of probation for a failure to pay costs without the requisite finding as to ability to pay is fundamental error."  *Aviles*, 165 So. 3d at 843 (first citing *Del Valle*, 80 So. 3d at 1004; then citing *Smith v. State*, 49 So. 3d 833, 834 (Fla. 1st DCA 2010); and then citing *Odom v. State*, 15 So. 3d 672, 678-69 (Fla. 1st DCA 2009)).

Here, the record reflects that the trial court made a limited inquiry into Aribu's living situation and employment status.  However, the trial court never explicitly asked Aribu whether he could afford to pay for the

5

mental health evaluation and necessary treatment, despite the fact that the trial court appeared to be concerned with that issue based on its question to the probation officer about whether the cost could be waived. At the end of the hearing, the trial court found that Aribu had *sufficient time* to arrange the mental health evaluation and to pay for it, but the trial court never found that Aribu had the *ability to pay* for the evaluation yet willfully failed to do so. The trial court's failure to make a specific inquiry into whether Aribu had the ability to pay and failure to make an explicit finding on that issue resulted in fundamental error.

However, this does not end the inquiry because Aribu was found in violation of the two other conditions. We have determined that the trial court properly found him in violation of those conditions. Yet Aribu contends that it is not clear that the trial court would have still revoked his probation and imposed the same sentence based on the other violations.

The trial court deemed Aribu to be a violent felony offender of special concern who posed a danger to the community. As a result, the trial court was required to revoke Aribu's probation and sentence him up to the statutory maximum. *See* § 948.06(8)(e)(2)(a), Fla. Stat. (2022). But in making that finding, the trial court referred to Aribu's failure to obtain the mental health evaluation in conjunction with a positive drug test. Aribu argues, and we agree, that this suggests that the failure to obtain a mental health evaluation played a significant role in the trial court's decision to find that he posed a danger to the community. Had the trial court not made such a finding, it would have had the discretion to revoke, modify, or continue Aribu's probation or to place him into community control. *See* § 948.06(8)(e)(2)(b). Consequently, because it is not clear that the trial court would have still revoked Aribu's probation

6

and imposed the same sentence based on the remaining violations alone, we reverse and remand for reconsideration.  *See Marchan v. State*, 192 So. 3d 658, 661 (Fla. 2d DCA 2016); *Jennings v. State*, 22 So. 3d 708, 711 (Fla. 2d DCA 2009).

Reversed and remanded.

SILBERMAN and LaROSE, JJ., Concur.

_____

Opinion subject to revision prior to official publication.